### D. BROWN v. THE STATE.

No. 5695. Decided April 28, 1920.

**1.—Murder—Manslaughter—Self-Defense—Justifiable Homicide—Charge of Court.**

Where, upon trial of murder and a conviction of manslaughter, the evidence showed that the case was not one of justifiable homicide, and that defendant's conduct deprived him of the right of perfect self-defense—by provoking the deceased by defendant's own unlawful act, and that the deceased was in the right when he was killed in trying to protect his home and his family, there was no error in the court's refusal to charge on perfect self-defense. Following Wells v. State, 63 Texas Crim. Rep. 618 and other cases.

**2.—Same—Evidence—Conspiracy—Act of Co-conspirators—Harmless Error.**

Where, upon trial of murder and a conviction of manslaughter, it developed from the evidence that the companions of defendant put a rope around the neck of the wife of deceased, put it over a rafter and pulled her up off of the floor, and during their assault upon her, while she was screaming and calling for help in a loud voice, the younger members of the family were kept by defendant in the lot, etc., all of which was done to make said wife tell what she knew about the murder of defendant's cousin. etc., the complaint that the court erred in admitting this testimony was not well founded and there was no reversible error. as the parties were all acting together. Besides, said testimony could not have injured the defendant, as shown by the verdict of the jury.

3.—Same—Preliminary Statement—Practice on Appeal—Harmless Error.

The absence of injury to the defendant, disclosed by the record, renders the failure of the court to require the district attorney to make an opening statement as directed by Article 717, C. C. P., harmless. Following Holsey v. State, 24 Texas Crim. App., 35.

4.—Same—Jury and Jury Law—Special Venire—Verbal Summons—Post Cards.

Where defendant moved to quash the special venire on the ground that said veniremen were served by the officers mailing out a post card to the different jurors, and not by verbal summons, as directed by Article 668, C. C. P., the same did not work a reversal in the instant case, because all of the special veniremen were either in attendance upon the court or were absent under legal excuse, or exemption. Following Charles v. State, 13 Texas Crim. App., 664, and other cases. Distinguishing Johnson v. State,

218 S. W. Rep. 496.

Appeal from the District Court of Nacogdoches. Tried below before the Honorable L. B. Guinn.

Appeal from a conviction of manslaughter; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*S. M. Adams, C. C. Watson, V. E. Middlebrook,* for appellant.—On question of preliminary statement: Cannon v. State, 208 S. W. Rep., 660.

On question of self-defense: Peter v. State, 23 Texas Crim. App., 687; Franklin v. State, 34 id., 286; McCandless v. State, 42 id., 62.

*Alvin M. Owsley,* Assistant Attorney General, for the State.

MORROW, Judge.—The appellant shot and killed Alex Escow. was indicted for murder, and convicted of manslaughter, and punishment fixed at confinement in the penitentiary for two years.

On the 16th of May, 1918, Orange Escow, a brother of deceased, killed Jackson Carnelly, who was a cousin of appellant and a deputy sheriff, in a field near the home of deceased. Excitement followed the homicide. A posse, of which appellant was a member, was formed, and on suggestion of search of Alex Escow's home a remark in the hearing of appellant was made that the Escow negroes were danger-ous. On the following afternoon, believing that the wife of deceased had knowledge of the whereabouts of Orange Escow, and was suppressing the information, the appellant in company with Smith and Davis went to the home of deceased, and while there the homicide took place. There is but slight conflict in the testimony relating the incidents of the transaction. Stating them as gathered from appellant's testimony, he and his companions had been deputized to aid in the apprehension of Orange Escow. They went by automobile, a

distance of about eleven miles, to the home of the deceased. Davis and Smith went into the house; appellant, observing a negro attempt to run out, followed him, and on reaching the back gallery Davis and Smith were engaged in conversation with the wife of deceased, trying to get her to tell what she knew about the murder. Pausing but a short time, he followed the negro, who had run out of the house, and ordered him to go in the lot, and shortly after reaching the lot he heard screaming at the house. There were several other young negroes about, and they were ordered by appellant to go in the lot. A negro boy, son of deceased, came from the field on a mule about this time, and the deceased, with a stick in one hand and a bucket in the other, was walking behind him. Quoting from appellant:

"When deceased was up about fifteen or twenty steps of me I told him to stop, and he stopped, and I told him that no one was going to the house, that the old negro woman was at the house and they were trying to make her tell where the murderer had gone, and he said he was going to the house. I told him to stop, that he was not going to the house, and for him to stop there, he would be all right there; and he said he was going to the house, if I didn't get out of the trail and let him go to the house he would kill me with the stick. He then started towards me, and I backed up two or three steps. maybe four or five, and I had my gun up to my shoulder. I motioned to him to stop. He kept on coming. From his appearance and looks I saw he was coming, and if I had not run or shot him or done something he would have knocked me in the head with that stick. I had been there the day before, and found a gun out there. I didn't know but what they had a gun there. They were all over the country. He was coming straight towards me when I shot him. My gun was up, and I walked backward, and I told him to stop."

From his cross-examination it appeared that he directed the younger member of the family to stay in the lot. They claimed that he told them to get in the wagon. He said he didn't know what Davis and Smith did to the woman, but he heard her screaming, hollering for help and praying, but didn't think they were going to hurt her. He said that he thought the old negro woman hushed hollering about the time that the old man reached the appellant, that he supposed deceased heard her hollering and was coming to ascertain what was the matter, that he was told by appellant that no one was going to hurt her.

Before the killing took place, the companions of appellant, Davis and Smith, put a rope around the neck of the wife of the deceased, put the rope over a rafter, and pulled her up off of the floor. During their assault upon her she was screaming and calling for help in a loud voice. The younger members of the family, who were congregated in a wagon at the lot, were also screaming. There was evidence that the deceased was in the habit of walking with a stick, and that at the time he was killed he had his walking stick. Several

state witnesses declared that he made no demonstration with it, and that appellant did not retreat, but shot the deceased as he approached.

The appellant assails as error the action of the court in refusing to instruct the jury upon the law of justifiable homicide. Under no phase of the evidence was the homicide justifiable; appellant's conduct deprived him of the right of perfect self-defense. If the deceased assaulted appellant in the manner described by him, the attack was provoked by appellant's unlawful acts, and the homicide to avert injury to himself was unlawful. The deceased had the right to protect his home and his family; Richardson v. State, 7 Texas Crim. App., 486; Wells v. State, 63 Texas Crim. Rep., 618; Ross v. State, 10 Texas Crim. App., 455; and to resist unlawful detention of his person, and in the interference with the exercise by the deceased of these rights, the appellant was the aggressor. He was a trespasser upon deceased's premises, and without warrant in law put deceased under such restraint as was tantamount to an illegal arrest. His acts were unlawful, and sufficient and reasonably calculated to provoke the difficulty. Ross v. State, 10 Texas Crim. App., 458; Peter v. State, 23 Texas Crim. App., 684; Goodman v. State, 4 Texas Crim. App., 349; Williams v. State, 41 Texas Crim. Rep., 365; Miers v. State, 34 Texas Crim. Rep., 161; Miller v. State, 31 Texas Crim. Rep., 609.

The fact that deceased stopped when appellant first ordered him to do so and presented his gun, and that he afterwards advanced, threatening injury to appellant if he obstructed his progress to his home, did not confer upon appellant the right to kill deceased. In restraining deceased by force of an assault with a shotgun he was guilty of a continuous assault. Alford v. State, 8 Texas Crim. App., 545; Johnson v. State, 5 Texas Crim. App., 47. The deceased had a right to resist it to regain his liberty and to go to his home. These rights continued, notwithstanding he stopped when the appellant first commanded him to do so. There was no abandonment of the aggression on the part of the appellant, so long as he opposed by force the freedom of action of deceased. Woods v. State, 3 Texas Crim. App., 204; Maner v. State, 8 Texas Crim. App., 361; Staples v. State, 14 Texas Crim. App., 136.

If, as claimed by appellant, he was ignorant of the character of force in use by his companions in making the wife of the deceased divulge facts within her knowledge, such ignorance would not render his acts lawful nor the homicide justifiable. He was aware that in making the woman disclose the facts within her knowledge the treatment of her by his companions was such as to cause her to utter screams, calls for help, and prayers for mercy. Whether her outcries continued up to the moment the shot was fired or not they were heard by the deceased and by the appellant before the deceased was commanded to refrain from going to the aid of his wife, and were known to appellant when he killed the deceased while he was resisting the force used by appellant to compel obedience to his commands. The

fear which appellant says possessed him that deceased might obtain arms if not restrained does not justify the appellant. The deceased had the right to procure arms, if necessary to protect his home and his family. Ross v. State, 10 Texas Crim. App., 455.

The complaint of the proof of acts of Davis and Smith, while they were assaulting the wife of deceased, in our judgment is not well founded. The appellant and his companions in entering the premises had the common purpose to make the negro woman divulge facts supposed to be within her knowledge. If, as he claims, the means of accomplishing this purpose were not agreed upon, his conduct in preventing interruption of their effort by keeping her son and daughters and her husband away, when by her protestations he was advised that the means used by Davis and Smith were putting her in terror and in pain, was such as to raise the issue that he and they were acting together. We find no evidence that in the design to compel the woman to divulge the facts the intent of appellant was different from that of Davis and Smith. But if the contrary were true, the conduct of appellant in continuing to act with them, with knowledge that personal violence was being used against her, would justify the conclusion that he ratified and adopted their acts, and make him a principal with them in the unlawful act. Moreover, the admission of the evidence showing the conduct of his associates towards the woman was not injurious to appellant, because despite such proof the verdict rendered by the jury was the most favorable to him that was authorized by the charge or justified by the facts.

The absence of injury disclosed by the record renders the failure of the court to require the district attorney to make an opening statement, as directed by Article 717, C. C. P., harmless Holsey v. State, 24 Texas Crim. App., 35.

The motion to quash the venire was overruled. The facts attending it are set out in the agreement contained in the bill of exceptions certified and qualified by the trial judge. From the bill we copy it as follows:

"That the said veniremen were served by the officer mailing out a post card and mailing the same to their addresses as known by them, that said original *venire facias* consisted of 100 men, as drawn by the District Clerk, but that only 42 appeared in obedience to said summons, and that defendant was compelled to select the jury or attempt to select the jury, from less than 50 per cent. of the *venire facias*, and forced to go to trial, and not withstanding which said motion and agreement so made by the state, the court declined and refused to sustain motion and quash *venire facias*, but overruled the same and renders said venire so drawn and required defendant to proceed with the selection of jury therefrom, and from which the defendant was compelled by the court to select the jury which tried said cause," to which action of the court the defendant, then and there excepted and tendered his Bill of Exceptions No. 2 (Latter half Tr. p. 23),

which Bill of Exceptions was tendered to the court and allowed by the Court (Tr. p. 24) with this proviso: "Further, all of the special venire were either in attendance upon court or had been excused by the Court on account of sickness or some legal exemption."

The statute, Article 668, requires the sheriff executing the writ of special venire to verbally summons the veniremen in person. The failure of the sheriff to comply with this statute does not in every case work a reversal. In the early case of Charles v. State, 13 Texas Crim. App., 664, the venire called for sixty men. But thirty-six were summoned. The motion to quash was overruled. The court said:

"In this case it does not appear that the trial judge committed any error in overruling the motion to quash the venire, nor that any right of the defendant was prejudiced thereby. For aught that appears from the record the jury that tried the case was composed of men selected from the thirty-six summoned jurors. If so, the defendant certainly cannot complain that he was injured by the ruling of the court upon his motion. It is not shown that the defendant, by reason of the ruling of the court, was compelled to pass upon talesmen jurors, or to accept any objectionable juror, or in any other manner suffer injury by reason of the overruling of his motion."

Rulings following the Charles Case will be found in Parsler v. State, 33 Texas Crim. Rep., 111; Jones v. State, 83 Texas Crim. Rep., 12, 214 S. W. Rep., 325, Whittington v. State, 86 Texas Crim. Rep., 1. 215 S. W. Rep., 457. The application of this rule to the instant case is emphasized by the qualification of bill by the trial judge to the effect that all of the special venire were either in attendance upon the court, or had been excused by the court on account of sickness or some legal exemption. The purpose of the personal summons is to procure the attendance of the jurors. When that is accomplished by an irregular summons, the form of summons is not available as a ground for quashing the writ unless some injury is shown. Whittington v. State, 86 Texas Crim. Rep., 1; 215 S. W., 457. From the 12 American & English Encyc. of Pleading and Practice, p. 324, we make the quotation:

"Where a venireman appears, though irregularly summoned, or in fact not summoned at all, the irregularity or omission will be deemed immaterial, since his attendance, which is all that the service of process would effect and which is its object, has been attained."

The case of Johnson v. State, 86 Texas Crim. Rep., 566., 218 S. W. Rep., 496, to which we are referred, is not analogous. In that case the statute designated the list of names drawn by the jury commissioners from which to draw a special venire. In drawing the special venire a different list was used. The record failed to disclose that any of the men composing the jury was legally drawn. The accused was denied a jury selected by law. This is not such a case. Here all of the jurors were legally drawn. The summons was irregular, but their appearance cured this fault. The jury illegally drawn in Johnson's

case assessed against him the death punishment. The jury in this case lawfully drawn, and attending in response to an irregular summons, convicted appellant of the lowest grade of offense which, under the law and the charge of the court, was authorized, and assessed against him the lowest punishment.

The judgment is affirmed.

*Affirmed.*