MARK WALKER v. THE STATE.

No. 6297. Decided May 25, 1921.

Rehearing denied June 24, 1921.

1.—Assault to Murder—Sufficiency of the Evidence—Intent.

Where, upon trial of assault with intent to murder, the evidence for the State, although conflicting with that of defendant, sustained the conviction, there was no reversible error.

2.—Same—Continuance—Verbal Application—Practice in Trial Court.

Where the record on appeal showed that no process had been issued for the alleged absent witness, and that the application for continuance was not in proper form to authorize the court to act upon it, and moreover the State's counsel offered to admit the alleged absent testimony, to be true and go to the jury, there was no error in overruling the motion for continuance.

**3.—Same—Evidence—Cross-examination—Declaration of Defendant.**

Where the trial court instructed counsel for defendant that he would permit him to prove that defendant said at the time, he was going home, but would not permit him to draw any conclusion from the statement, there was no reversible error.

**4.—Same—Evidence—Time of Night—Habits of People.**

Where, upon trial of assault with intent to murder, the witness had already testified that the trouble occurred about nine-thirty at night, there was no error in sustaining an objection to a further question on cross-examination, whether this was not considered by the people an early hour; the time of night at which the transaction occurred not throwing any light upon the matter.

**5.—Same—Evidence—Reputation for Honesty—Other Testimony.**

Where defendant was permitted without restriction to introduce evidence as to his general reputation upon the element of character which was in issue upon the trial, there was no error in sustaining an objection to testimony as to his general reputation as to honesty and fair dealing; besides, such testimony was admitted by other witnesses.

**6.—Same—Evidence—Declaration by Defendant—Postponement of Trial.**

Upon trial of assault with intent to murder defendant's witness testified that defendant, when he reached home, said that he was shot by an officer, there was no error in refusing a postponement of the trial by verbal application—to suspend the trial until defendant's wife was able to attend the court, to show that defendant said he was attacked by a robber; besides, the same testimony had already been admitted.

**7.—Same—Conduct of Defendant—Practice in Trial Court—Verbal Motion.**

Upon trial of assault with intent to murder, there was no error in overruling the request that defendant withdraw his announcement of ready for trial because he was still suffering from the wound and was not able to speak loud enough for the jury to hear him, the record showing that defendant had been in the court-room all the while and had made no complaint whatever of his physical condition; and that the defendant spoke perfectly distinctly; besides, the motion was verbal and not in proper form.

**8.—Same—Rehearing—Malice—Sufficiency of the Evidence.**

Where, upon motion for rehearing, the appellant again insisted that the evidence was insufficient to show malice, but the record on appeal shows to the contrary, and that there was sufficient evidence to sustain the conviction, there was no reversible error. Distinguishing Brown v. State, 87 Texas Crim. Rep., 261.

Appeal from the Criminal District Court of Dallas. Tried below before the Honorable Robt. B. Seay.

Appeal from a conviction of assault with intent to murder; penalty, five years' imprisonment in the penitentiary.

The opinion states the case.

*Allen & Allen,* for appellant.—On question of malice: Farrer v. State, 42 Texas, 265; Burnham v. State, 43 id., 322; Ferrell v. State, 43 id., 503; Summers v. State, 5 Texas Crim. App., 366.

*R. H. Hamilton,* Assistant Attorney General, for the State.

HAWKINS, JUDGE.—Appellant was convicted of assault with intent to murder upon one C. T. Plant, and his punishment assessed at five years' confinement in the penitentiary.

C. T. Plant was connected with the police department in the city of Dallas, and, upon the night this offense is alleged to have been committed, in company with L. C. Stuterville, another member of the police force, was patrolling the resident section of the city. For this purpose they were using an automobile. During this period a great many burglaries and other offenses were being committed in the city, and the officers were on the look-out for strangers and suspicious characters. About 9:30 o'clock upon the night in question they saw appellant, who was a negro, on Live Oak Street, and according to their testimony, stopped their car, told him they were police officers showed him their badges, and inquired of him who he was and where he was going. Appellant replied that he was on his way home, and told them where he lived, but upon further inquiry from the officers as to why he was on Live Oak Street if he lived at the place stated by him, he began to back away from the car and made a demonstration as if to draw a pistol, whereupon Plant got out of the car and requested him to stop, that he wanted to talk to him further, when appellant drew his pistol and fired upon Plant, hitting him. The officer drew his pistol about the same time, but claims that he did so because of the action of appellant in starting first to draw his weapon. Both the officer and the appellant were shot. The testimony of the other officer was substantially the same as that of Plant. Appellant, on the other hand, testified that he did not know that the men who accosted him were officers, nor why they were interrogating him, and claims that they made the first move to draw a weapon, and that he fired, defending himself from what he thought was an attempt to rob him. It is not necessary to set out more in detail the testimony than has already been done.

Appellant in various ways raised the question that the evidence was insufficient to authorize the trial judge to submit to the jury the issue of assault with intent to murder, and contends before this court that the trial court was in error in submitting that issue. From the standpoint and the testimony of the appellant, his contention would be correct, because certainly if he had no notice that the parties who accosted him in the manner they did were officers, and he believed they were attempting to rob him, he would not be guilty even of an aggravated assault. On the other hand, if the jury believed the testimony of the officers, appellant had been apprised by them of the capacity in

which they were acting, and if he made an assault upon Plant as testi-
fied to by him and his fellow-officer, the circumstances surrounding
the transaction were sufficient to authorize the jury to find that ap-
pellant was actuated by malice, or to infer malice from all the facts
and circumstances attending the assault. The trial court would have
committed error against the State if he had taken away from the jury
the issue of assault with intent to murder.

Appellant made verbal application for a continuance because of the
absence of his wife, who was not able to attend court on account of
an attack of rheumatism, claiming that if she were present she would
testify that when appellant left home on the night of the shooting he
said he was going to town to get his supper and coming right back.
No process had been issued for his wife, and the application for con-
tinuance was not in proper form to authorize the court to act upon
it; but the court qualifies the bill by showing that the district attorney
said he was willing to admit that the wife, if present, would so testify,
and that her testimony was true, and that counsel for appellant was
informed that he might make such statement to the jury any time dur-
ing the trial, if he desired. From the foregoing statement it would
be apparent that in any event there was no error on the part of the
court in his action in not granting appellant's request to continue the
case.

By another bill of exceptions it is made to appear that on cross- ex-
amination counsel for appellant asked officer Plant what the appellant
told him about what he was doing at the time he was accosted by the
officers, to which the officer replied, "He did not say he was doing
anything; he said he was going home," to which counsel replied,
"Going home, is not that doing something?" Some colloquy here
seems to have occurred between counsel representing the State and
appellant, and objection was made to this last question and was sus-
tained by the court, to which appellant reserved his bill. The court
instructed counsel for appellant that he would permit him to prove
that appellant said he was going home, but not draw any conclusion
from that statement. We find no error on the part of the court in
the respect complained of.

While counsel for appellant was cross-examining the witness Plant,
who had already testified that the trouble occurred about 9:30 at
night, he was asked the further question, if, according to the habits
of the people in Dallas, 9:30 at night was not considered an early
hour. Objection was sustained, and the bill shows that if permitted
to answer the witness would have answered "yes" to the question.
The issue being tried before the jury was not whether appellant was
out at an unreasonable hour of the night, but upon a charge of as-
sault with intent to murder. The time of night at which the transac-
tion occurred would throw no light upon the matter as to what the
real facts were, nor the intent with which appellant acted in the shoot-
ing. It appeared from the evidence that appellant was really on his
way home, and so far as the record shows was not engaged in nor

contemplating any unlawful act, but the officers in the discharge of their duty had a right to stop and interrcgate him in a respectful manner, whether the time was 9:30 or any other hour of the night. We can see no error in the ruling of the court as the bill is presented by the appellant. The court qualifies the bill by showing that the witness had already answered, "I cannot say whether that is a reasonably early hour for people going home in the city of Dallas or not. I do not know the time the picture shows closed up at that time." It would appear from the qualification of the bill that after the witness gave the answer indicated, counsel was then seeking to prove the habits of the people of Dallas, which we think was not permissible under the circumstances.

By another bill of exceptions appellant shows that, it having been proven that robbery and theft were prevailing in the city of Dallas at the time of the shooting, and that the prosecuting witness was patrolling a certain section of Dallas in search of thieves and robbers, appellant offered to prove by several witnesses that his general reputation for honesty and fair dealing was good, and that he was in fact an honest, hard working negro. Objection was made by the State, which was sustained by the court. The qualification to the bill makes it apparent that appellant was permitted to prove that his general reputation as a peaceable, law-abiding and quiet citizen was good, but the court would not permit proof as to his honesty and fair dealing. The question before the jury was not whether appellant was an honest, hard working negro. He was upon trial for assault with intent to murder, and he was permitted without restriction to introduce evidence as to his general reputation upon the element of character which was an issue upon the trial. This, as we understand, has always been the rule. If at the time the officers accosted him any accusation had been made against appellant that he was engaged in any unlawful enterprise, impeaching his honesty, and that had in any way become an issue upon the trial, the offered testimony would have been pertinent. The qualification to the bill shows that the witnesses had testified as to where the appellant lived, what business he was engaged in, and one of the witnesses, Mr. Cole, testified that before he permitted the appellant to come upon his premises to live he made inquiry about him, because he did not want to have an improper or worthless negro about his house, and found that the record of appellant and his wife was all right.

After the witness Cole had testified that appellant, at the time of the shooting, lived in his servant's house, and immediately upon appellant reaching home after he had been shot by the officer he told him that an officer had shot him, and that he was doing nothing at the time, appellant requested verbally that the court suspend and postpone the case until defendant's wife was able to attend court, claiming that she would swear that appellant told her he actually thought that the party assaulting him was a bandit or robber and was trying to rob

him. The court declined to postpone further the trial of the case, and appellant assigns this as error. This verbal application for a postponement of the case, or a continuance after the trial had commenced, did not in any manner comply with Art. 616, C. C. P., and is not presented in such a way that this court can take cognizance of it. The law does not contemplate verbal applications for continuance in the first instance, nor are such applications permitted during the progress of the trial. The qualification to the bill also shows that the witness Cole was placed upon the witness stand by appellant, and the answer of Cole to the effect that "appellant told him he had been shot by an officer" was elicited by a question propounded by appellant himself upon re-direct examination after cross-examination by the State was concluded. Appellant knew or he should have known what the witness Cole would testify upon this point, and if he did not desire such information to go to the jury he should have refrained from asking questions which elicited it. Appellant himself while testifying made practically the same statement, admitting that he told Mr. Cole that an officer had shot him.

Appellant further complains that at the time of the trial he was still suffering from the wound, and that while undertaking to testify in his own behalf he was not able to speak loud enough for the jury to hear him, whereupon his attorney requested the court to allow him to withdraw his announcement of ready, and continue the cause. This request was denied by the court, and appellant complains by reason thereof. The court appends the following explanation to the bill of exceptions. "This trial was gone into on the 15th day of March, and it was on the 16th of March that this defendant took the stand as a witness. The defendant had been in the courtroom since the morning of the 15th, and had made no complaint whatever of his physical condition. When he took the stand he was talking low while testifying, and the court told him to speak up louder, thereupon the witness said that he could not talk any louder, that he was still suffering from his wound. At this point the defendant verbally made the motion as set out in his bill of exceptions. The court overruled it and here states as a matter of fact that the defendant testified and was on the stand a good long time, speaking perfectly distinctly and showing no evidence, that the court could see, of any illness whatever. It will be noticed that this application to postpone also under Article 616, of the Code of Procedure, was not put in a shape that the court could take any consideration of the same." We see no error in the ruling of the court in the particular complained of in view of his statement in the qualification that the appellant was speaking perfectly distinctly, and there is no showing other than the statement in the bill that any juror in the case had trouble in understanding what appellant was saying in his own behalf. If this had been the case it should have been shown by the jurors upon the motion for new trial, or in some other proper manner.

Finding no error in the record, the judgment of the trial court is affirmed.

*Affirmed.*

ON REHEARING.

June 24, 1921.

HAWKINS, Judge.—Appellant has filed a motion for rehearing, in which he earnestly insists that we were in error in our original opinion in holding that the evidence raised the issue of assault with intent to murder, that is, to state it in another way, he insists that there was no evidence that appellant acted with malice at the time he fired the shot which was the basis for this prosecution.

We did not quote the testimony of the police officers at length in our former opinion, but undertook to state the substance thereof. In view of the motion for rehearing challenging the correctness of our conclusion upon this point, we condense from the statement of facts the testimony of L. V. Stuterville, one of the officers present upon the occasion. His testimony, substantially is: "That from the way appellant was sauntering along on the walk he looked suspicious, and we stopped the car and called him up to the car and told him we were two police officers, and wanted to talk to him; he said he lived on Swiss Avenue, whereupon we asked him what he was doing on Live Oak street. When we showed him we were police officers he seemed like he did not want to be investigated, and backed away from the car, and we both got out, and Plant walked up to him and told him he wanted to talk to him, and he pulled his gun out of his overcoat pocket and commenced to fire. Plant never took his pistol out until appellant got his gun out and commenced to fire; not until defendant went after his gun and pulled it. Appellant commenced to shoot before Plant drew his pistol; before Plant even went after his pistol the appellant was already shooting at him, so far as I could see; he shot his pistol before Plant got his gun. It looked to me like the negro pulled his gun and fired, and about that time Plant got his. He had not already reached for his pistol before the negro fired; I was looking at both of them."

To our minds it is clear that the testimony just set out fairly raises the issue of an assault with malice. It was, of course, a question of fact to be determined by the jury. The issues are fully presented by the court in his charge, which submitted both the issue of assault with intent to murder and aggravated assault. The jury had an opportunity to solve that question in favor of the appellant, if they had seen fit to do so under the testimony. For us to assert that the issue of malice had no support in the evidence would be to substitute our judgment in that particular for that of the jury. We still believe the issue was fairly raised, and that appellant's rights were guarded at all points

by the charge of the court, and that we would not be authorized, upon an issue of fact, to disturb the verdict. This case in no way militates against the doctrine announced in Brown v. State, 87 Texas Crim. Rep., 261. In that case two officers were unlawfully attempting to make the wife of deceased give them some information which they believed she could impart, and had put a rope around her neck and were pulling her up off of the floor. She was screaming and calling for help. The deceased, her husband, who was in the lot at the time, heard her out-cries, and attempted to go to the house to her assistance, whereupon Brown intercepted him and upon the deceased insisting upon his right to go to the house, and procuring a stick and approaching Brown, the latter killed him. In that case it was held, and properly so, that deceased had the right to go to his house and to the protection of his wife. who was being dealt with in an unlawful manner, and if necessary, to procure arms in an effort to protect his home and family, and that Brown, under the circumstances, had no right to kill him.

Being unable to agree with appellant's contention that the issue of assault with intent to murder was not raised, we adhere to our former opinion, and the appellant's motion for rehearing is overruled.

*Overruled.*