ALLEN MATTHEWS v. STATE

No. 25229. April 11, 1951
Rehearing Denied June 6, 1951.
Appellant's Second Motion for Rehearing Denied
(Without Written Opinion) June 30, 1951.

Hon. Frank Williford, Jr., Judge Presiding.

*J. M. Johnson*, and *Dick Young* (of counsel for appellant on appeal only), Houston, for appellant.

*George P. Blackburn,* State's Attorney, Austin, for the state.

BEAUCHAMP, Judge.

The appeal is from a conviction for rape with the death penalty.

The offense is alleged to have been committed on the 19th day of August, 1950. The indictment was returned by the grand jury on August 25, 1950, and on the same date the court appointed two attorneys to represent the accused in the trial of his case. On the 3rd day of October, thereafter, the defendant came into court and filed an affidavit stating that he and his family had employed Mr. J. M. Johnson, an attorney of Houston, Texas, to represent him and that he had not agreed and does not now consent to be represented by any other attorney in this case. The appointed attorneys thereupon retired from the case.

A special venire of 175 men had been ordered and the new attorney filed a motion to quash this venire, which the court overruled. The question is presented as Bill of Exception No. 1. The ground alleged in this motion is the absence of a written request by the state for the special venire. We think Article 588, Vernon's Ann. C.C.P. supports the court's action. As qualified by the court, the bill shows no error.

Four other bills are found in the record, each of which is qualified by the court. We have carefully examined the same and find no error.

The prosecutrix testified at great length, on direct and cross-examination, telling a consistent story of a horrible experience with appellant. She was at a cab station at a late hour of the night, in the town of Bellaire, near what was known as the Bellaire Pharmacy. While waiting for a cab appellant ap-

peared on the scene. She realized that someone had approached her and as she looked around she saw appellant with a knife blade shining in the light, and saw that he was in his stocking feet. She started to the middle of the street and as she did appellant approached her further and told her that he was waiting for a cab. In order to frighten him away she told him she was waiting for a policeman. From his voice she observed that he had been drinking. She brooke loose from him and started to run and began screaming. He ran after her, caught her in the middle of the street, struck her, knocked her down on her knees, then raked her back with a knife inflicting a slight wound. He then grabbed her by the left arm and dragged her across a wooden bridge into a little enclosure at the back of the drug store among some small buildings. He forced her, by his threats, to stop screaming and eventually forced her on the ground and ravished her. She tells the story of begging and pleading with him to take her money and jewelry and not harm her. Because of his threats to kill her, she begged for her life telling him she had two children and no one to look after them. He ravished her three times and then left her under promise that she would remain until he had made his getaway and that she would not tell what had happened.

Her story of his dragging her and of the struggle to prevent him from accomplishing his purpose is further verified by the doctor who examined her shortly thereafter and who describes the torn condition of her clothes and the wounds inflicted on her, in substantiation of the evidence which she gave. She threw her purse, watch and other things, into the weeds where they were found soon thereafter by the chief of police and his men.

By a singular coincidence, this appellant was taken into custody on suspicion by a patrolman only a short distance from the scene of the tragedy, as he was attempting to thumb a ride in a passing car. He was carried to the police station and was being held when his victim was carried there a few minutes later by a passing car. She immediately recognized him as her attacker and informed the officers. After investigating the case, appellant was turned over to the sheriff of the county and lodged in the county jail.

After hearing all the testimony of the state the defendant took the stand and said: "I am charged with raping the woman that just left the witness stand, which it is alleged occurred about 1:30 A.M. on August 19th, 1950. I did that. I raped her.

I had intercourse with her." He then told his story, saying that he was intoxicated and thought that the prosecutrix was. He denied the truth of much of her evidence and made statements of his own to similar facts; denied the truth of the statement the officers made about his arrest and the recovery from him of his pocket knife; he claimed that she made no resistance and at least gave indications of her consent to his act. He even stated that she offered him her purse if he would not tell the policeman on her. He was married and lived with his wife some distance from the scene. From the testimony of the officers it is made clear that there is no foundation for his belief that prosecutrix had been drinking.

The jury heard the evidence of the state and that of the defendant. His own story raises no issue of an affirmative defense. The appropriateness of the verdict is a matter for the jury.

We find no reversible error in the trial of the case and the judgment is, accordingly, affirmed.

### ON APPELLANT'S MOTION FOR REHEARING

DAVIDSON, Judge.

Appellant insists that reversible error is reflected by his Bills of Exception No. 3 and No. 4 (which we did not discuss in our original opinion) wherein he complains of the sheriff's summoning the veniremen by mail and not in person, and also of the trial court's refusal to quash the special venire.

Appellant was indicted on August 25, 1950. The offense was alleged to have been committed on August 19, 1950.

On the same day the indictment was returned, the trial court appointed two attorneys to represent appellant, the order reciting, among other things, that appellant appeared "in person informing the Court that he had no way to obtain Counsel."

The case was set for trial on the 4th day of October, 1950. At the oral request of the state a special venire was ordered drawn, returnable on the 29th day of September, 1950.

One of the attorneys appointed to represent appellant agreed that the veniremen might be summoned by mail. Such agreement, however, does not appear to have been made with the

knowledge, sanction, or agreement of the appellant. To the contrary, the attorney who made the agreement testified:

"At the time I made that agreement to mail out the notices I had not discussed the matter with the Defendant or received his permission in any way, shape or fashion to go ahead and make that arrangement with the Sheriff's Office."

On the day preceding the date the case was called for trial, the appellant filed his affidavit stating that relatives had employed an attorney to represent him and that he desired that said attorney conduct his defense and "handle all proceedings of every kind and nature in connection with his representation and defense." In this affidavit is found the following pertinent paragraph:

"Said Defendant has not agreed or consented and does not consent nor agree for any other attorney to represent him in connection with his incarceration and the defense of said indictment against him now pending herein, for which a trial has been set for the 4th day of October, A. D., 1950, and a special venire summoned to try him on said date."

The record does not reflect the entry of a formal order dismissing the appointed attorneys from further participation in the case. However, by a qualification to one of the bills of exception, it is shown that the attorneys appointed to represent appellant were excused from further participation in the case at the request of the appellant and no objection was made thereto.

The qualification to another bill shows that the jury which tried the case was selected "without objection from the venire drawn, without defendant having exhausted his peremptory challenges," and that no objectionable juror was forced upon the appellant.

The requirement of Art. 597, C. C. P., that veniremen be verbally summoned is a procedural matter. Non-compliance therewith constitutes reversible error only when the accused has been injured thereby. No injury is shown when the veniremen appear and attend in obedience to the irregular summons. Walker v. State, 104 Tex. Cr. R.207, 283 S. W. 787; Hill v. State, 134 Tex. Cr. R. 163, 114 S. W. 2d 1180.

The instant record does not reflect that the veniremen chosen

did not appear in answer to the summons by mail. Moreover, appellant made no objection to any juror, no objectionable juror was forced upon him, and he did not exhaust his peremptory challenges.

In the light of these facts, we are unable to reach the conclusion that appellant was injured by reason of the summoning of the veniremen by mail rather than in person.

In reaching this conclusion it is unnecessary to determine whether the appointed attorney had the authority to waive personal service. That question is not here decided.

We have again examined the entire record, and remain convinced that a correct conclusion was reached originally.

Appellant's motion for rehearing is overruled.

Opinion approved by the court.