ROBERT ERNEST MIERS V. STATE.

No. 25,654. February 6, 1952.
Rehearing Denied June 18, 1952.
Appellant's Second Motion for Rehearing Denied
(Without Written Opinion) October 15, 1952.

Hon. Joe Burkett, Special Judge Presiding.

*Joe Lee Hensley* and *J. Douglas McGuire,* San Antonio, for appellant.

*Austin F. Anderson,* District Attorney, *Richard J. Wood,* Assistant District Attorney, San Antonio, and *George P. Blackburn,* State's Attorney, Austin, for tht state.

MORRISON, Judge.

The offense is murder; the punishment, death.

Four witnesses present at the filling station on the night of the robbery testified for the state. They said that appellant and his companion Thorbus held them up with pistols and searched the establishment for money, the owner having refused to disclose where he had his money hidden.

They related that during this search appellant and Thorbus became separated, there being several rooms in the combination filling station, store and residence; and during this separation the owner of the premises and the deceased, who was his neighbor and friend, evidently simultaneously conceived the idea of overpowering the robbers. The owner of the station attacked Thorbus, and the deceased went in search of appellant.

The person nearest deceased at the time he received the fatal wound was the wife of the owner of the premises. She testified that she was being marched at pistol point by appellant through one room of the establishment when deceased entered. She stated that deceased "jumped toward my right side. As he got to my right side as he made a grab like that for Miers, who was in back of me, then a second later he jumped backwards to the right side of me in front of me with his hands up like this, and a shot was fired in the back of me, and it kind of knocked Mr. Sendemer like that, and he lunged forward and he said, 'Oh, my God', and made a grab, and I heard some tussling back of me." She further testified that a momentary scuffle ensued behind her, that she heard a door slam, that she looked around, found that appellant was gone, and saw deceased falling to the floor.

It was further established that Thorbus shot the owner of the premises, though not fatally, during the course of the melee.

The doctor who performed the autopsy testified that it would be possible for one who had received a wound similar to the one inflicted on deceased to have engaged in a momentary struggle following the receipt of the same.

Appellant testified; recounted a sordid and tragic life spent in a home for dependent and neglected children, the National Training School for Boys, and Federal correctional institutions; and then told of a series of holdups preceding the one on the night charged in the indictment. Appellant corroborated the state's version of the robbery, except that he stated that he had fired to one side of deceased hoping to scare him, but that

this failed to deter deceased who continued to come at him; that deceased grabbed his coat, and that he tried to hit deceased with the pistol in order to get loose from him. Appellant stated that at this juncture the deceased got the pistol out of his hand and hit him over the head with the same, causing the pistol to be discharged.

We consider the Bill of Exception No. 1 urged by appellant. It complains of the failure of the court to grant his motion for severance.

We find as a part of this bill the following certificate:

"The Court was of the opinion that the granting of a severance would have necessitated a continuance in both the Miers case and the Johnson case, therefore the motion for a severance is overruled."

Appellant accepted this bill containing the above certificate and is bound thereby.

Under Article 651, C. C. P., Note 7, and Texas Digest, Crim. Law 622(2), we find numerous authorities holding that a request for severance permitted under Article 650, C. C. P., will not be granted where to do so would "operate as a continuance to either party."

Bill of exception No. 2 complains of the court's failure to grant appellant's motion to quash the special venire based upon the following:

1. That the court in his order failed to direct the officer executing the writ as to the manner of service.

2. That the court had, without the consent of appellant, excused as many as 50 of the veniremen prior to the time the case was called for trial.

The bill shows that, at the time the motion was presented to him, the court dictated a nunc pro tunc order to the sheriff directing him to summons the venire for said case by mail.

The court qualified the bill with reference to the veniremen whom he had excused as follows:

"That only those veniremen who presented a statutory legal excuse were excused by the trial judge * * *"

"That the Court offered to have any veniremen brought in if defense counsel would furnish a list of those desired but no such list was furnished, and the matter was not again brought up * * *."

It will be noted that Article 597, as amended by the 52nd Legislature, was in effect when the motion was filed. We feel that the nunc pro tunc order cured the defect in the original order.

With reference to the veniremen excused by the court, we feel that for appellant to here complain he should have availed himself of the opportunity afforded him by the court's offer to have the absent veniremen brought in.

For a discussion of the law applicable under the old Article 597, which was more stringent than the present amendment, we refer to Brown v. State, 81 Tex. Cr. R. 261, 222 S. W. 252, wherein we held it incumbent upon appellant to show injury resulting from summoning the venire by post card; to McKee v. State, 132 Tex. Cr. R. 67, 102 S. W. (2d) 1058, where we gave effect to the qualification of the court stating that the veniremen whom he had excused were possessed of a legal exemption; and to those cases cited in Texas Digest, Crim. Law 1166½ (5).

Bills of Exception Nos. 3 and 4 complain of the court's refusal to admit in evidence certified copies of the petition filed in the Juvenile Court of Harris County in 1942, praying that appellant and his brother be declared dependent children, together with decree granting such prayer.

We cannot conceive of any theory under which such evidence would be relevant.

Bill of Exception No. 5 complains of a remark of the court which occurred while appellant was testifying and after he had been interrupted by an objection of the state. The court seems to have overruled the state's objection because he said "Go ahead." Evidently, the appellant did not understand the ruling of the court, because he turned to the court and asked, "You meant me to keep telling it, your honor?" to which the court replied, "Go right ahead and tell your story."

An examination of the record reveals that appellant in fact

had told the entire story of his life and was near the conclusion thereof when the court gave the answer of which he now complains. Under the facts, this remark does not impress us as a comment upon the weight of the evidence.

Bills of exception Nos. 6 and 7 complain of the failure of the court to charge on circumstantial evidence. This, he claims to have been required because no state witness testified that they actually saw appellant pull the trigger that caused the death of deceased and because appellant testified that he did not shoot deceased, but that deceased shot himself accidentally in the scuffle.

These facts do not warrant a charge on circumstantial evidence.

It is the well established rule of law in this State, as will be seen from the cases cited in Texas Digest, Criminal Law 814(17), that in the case of homicide direct testimony from any source that the accused was an actor in bringing about the death of the deceased characterizes the case as one of direct and not of circumstantial evidence. This direct testimony was supplied by the wife of the owner of the premises.

Bill of Exception No. 8 complains of the failure of the court to give his requested charge as follows:

"If you believe that the shot that was fired, if any, which killed the deceased, A. J. Sendemer, if the same did, was not fired by the Defendant, Robert Ernest Miers, or if you have a reasonable doubt thereof, you should acquit the Defendant and say to the verdict, 'not guilty'."

The requested charge is too restrictive. This is true because the facts of this case show that appellant and Thorbus entered the place of business for the purpose of committing the act of robbery. They then became principals and amenable under the law for acts of the other in the furtherance of their criminal enterprise.

Appellant now contends that the requested charge, though incorrect, put the trial court on notice that he wanted a charge on the claimed defense as testified to by him.

We must first determine whether the facts testified to by appellant constituted a defense at all. He stated that he did not

fire the fatal shot, but that the same was fired accidentally by the deceased while deceased was endeavoring to thwart his act of robbery.

In Taylor v. State, 41 Tex. Cr. R. 564, 55 S. W. 961, one of the robbers, while in the act of robbing a train, took the fireman from the engine to the express car. At this juncture, one Buchanan, a passenger on the train, came out of the rear and began firing. There was a return of Buchanan's fire, and in the progress thereof the fireman was killed. The robber was tried for the murder of the fireman.

One of the objections to the court's charge was that it authorized a conviction even if the foreman came to his death by an outside, independent and unexpected force, by a mere passenger who was under no obligation to shoot.

Judge Henderson, in discussing the same, made this profound statement of law:

"The whole question here is one of causal connection. If the appellant here set in motion the cause which ooccasioned the death of deceased, we hold it to be a sound doctrine that he would be as culpable as if he had done the deed with his own hands."

We hold here that appellant set in motion the cause which occasioned the death of deceased, and therefore his testimony did not present a defense.

Finding no reversible error, the judgment of the trial court is affirmed.

ON APPELLANT'S MOTION FOR REHEARING.

DAVIDSON, Judge.

Appellant insists that error is reflected in the action of the trial court in overruling his motion for severance. In this connection, because of the trial court's qualification to the bill of exception to the effect that it was his "opinion" that the granting of a severance would have necessitated a continuance of the case, appellant challenges the conclusion in our original opinion upholding the trial court's ruling. He stresses that the "opinion" of the trial court as to this matter is not a certificate, in fact, that the granting of the severance would "operate as a continuance," as provided by Art. 651, C. C. P.

Of course, the "opinion" of the trial court does not constitute such "fact," and merely the trial court's "opinion" that the granting of the severance would operate to continue the case does not meet the statutory requirement. But, here, the bill of exception shows that at the time of the hearing of the application for severance evidence was heard which is incorporated in the bill. This evidence warrants the trial court in concluding that the granting of the severance would have operated to continue the case.

We remain convinced that reversible error is not reflected in the overruling of the motion to sever.

Appellant insists that his motion to quash the venire was well taken. The bill of exception presenting this matter shows that, upon the motion of the state, a special venire of two hundred fifty names was ordered drawn in this and another capital felony case. The order was in the usual form and contained no reference whatsoever as to whether the sheriff was to summon the veniremen in person or by first-class mail, as provided by Art. 597, C. C. P., as amended.

The veniremen were summoned by the sheriff by first-class mail. Before overruling the motion to quash, the trial court dictated a nunc pro tunc order, directing the sheriff of Bexar County to summon the veniremen by mail.

There is nothing to show that this nunc pro tunc order was the order that was, in truth and in fact, made by the trial court in the first instance, or that the order as actually then made and entered of record was incorrect and subject to being impeached by the nunc pro tunc order.

Nunc pro tunc means "now for then," and its purpose is to give effect to and record that which was in fact done but which was not correctly entered of record. It is not the purpose of a nunc pro tunc order to make, nor does it have the legal effect of making, a new and an independent order and entering that new order of record as to a transaction having occurred at a prior date.

Inasmuch as the order for the venire as actually entered herein was not impeached and there was no testimony showing that in fact the trial court did, at the time the special venire was ordered, also direct the sheriff as to the method to be pursued in summoning the veniremen, this question must be de-

580

termined upon the sufficiency of the order first entered, which made no reference to whether the veniremen were to be summoned in person or by mail.

The mode and manner of service or summoning the venire is a procedural matter, and non-compliance therewith constitutes error only when injury has been shown. Matthews v. State, 156 Tex. Cr. R. 275, 239 S. W. 2d 817. As to this, the bill of exception does not reflect the number of veniremen who actually attended and were present in court in answer to the summons by mail; the bill of exception does reflect that, without appellant's exhausting all his challenges, a jury was obtained from those who did appear.

We remain convinced that the appellant has failed to show injury in the overruling of his motion to quash the venire.

Believing that a correct conclusion was reached originally, the motion for rehearing is overruled.

Opinion approved by the court.