EARL VENEY *v.* STATE OF MARYLAND

[No. 565, September Term, 1966.]

160

*Decided October 15, 1968.*

The cause was argued before HAMMOND, C. J., and MARBURY, BARNES, McWILLIAMS, SINGLEY and SMITH, JJ.

*Daniel E. Klein, Jr.* and *Wallace E. Hutton* for appellant.

*David T. Mason, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Charles E. Moylan, State's Attorney for Baltimore City,* and *Robert S. Rothenhoefer, State's Attorney for Frederick County* on the brief, for appellee.

SMITH, J., delivered the opinion of the Court.

The appellant was tried by a jury in Frederick County under four indictments returned by the Grand Jury of Baltimore City. He was convicted of assault with intent to murder Lt. Joseph P. Maskell of the Baltimore City Police Department, robbery of Leo Lewis and Clarence Robert Friday with a dangerous and deadly weapon, and assault and battery upon John Drake.

The charges in these indictments grew out of an incident which took place at Luxie's Liquor Store at 2002 Greenmount Avenue, Baltimore City, at approximately 9:40 P.M. on December 24, 1964.

There was evidence before the jury of entry into the liquor store of a man with a gun who announced a holdup. He cleaned out two cash registers. Leo Lewis was the manager on that evening. A second man entered the store and at the direction of the man with the gun pulled a burglary camera from the wall. Customers in the store, including Drake, were directed to a certain part of the store. Drake and a fellow customer were directed at gun point to place their hands on the counter.

Friday, a customer, had a $10.00 bill in his hand with which he was bargaining for a transistor radio. The person holding the gun directed Friday to come to him, waving the pistol at him. Friday was then relieved of the $10.00 by the man holding the

pistol. Friday identified appellant as the person who held the pistol.

The robbers left the store upon being advised that the police were coming. Lt. Joseph P. Maskell testified he arrived at the scene, saw two men standing in the doorway of the liquor store and intercepted one of the men. He was in the process of frisking the intercepted man when three other men appeared in the doorway of the liquor store, one of whom fired a shot which struck Lt. Maskell in the right chest. Lt. Maskell then dove through the air, landing on his face. While attempting to get his revolver from his service holster, he was shot in the back. Lewis, the store manager, also testified as to the shooting of the police officer.

Willis E. Taylor testified as to the planning of the robbery that afternoon by Timothy Brown, Samuel Veney, Taylor and appellant. He further testified as to the entry in the store for the robbery of Samuel Veney and Taylor, later followed by Timothy Brown and appellant. He identified appellant as the one who pulled the camera down. He identified Samuel Veney as the one whom Lt. Maskell had apprehended. Taylor said he saw appellant shoot Lt. Maskell.

Walter Ferguson stated that he knew appellant, Samuel Veney, Timothy Brown and Willis Taylor. He saw them on the night in question on a street corner near Luxie's Liquor Store. They told him they were going to rob the store. He left to get his suit from the tailor's shop. When he returned they were in the process of going in and robbing the store. He testified Taylor and Samuel Veney were the first two who went in. He saw the arrival of Lt. Maskell and the ensuing scuffle. In response to the question, "What happened after something hit the ground?", Ferguson replied, "That is when I seen Earl Veney—he shot the police officer."

Frances Mitchell testified that on Christmas Eve of 1964 she was at the home of Thelma Langley. She had known appellant and his entire family for a number of years. Appellant came to the Langley home at approximately 10:00 P.M. on that evening. She overheard appellant and the other two individuals who came in about the same time (Samuel Veney and Taylor)

talking among themselves about a policeman who had been shot. She heard appellant say he thought he had shot the policeman.

## I.

Appellant claims error by the lower court in overruling his exceptions to the State's answers to demands for particulars.

Demands for particulars were filed in all four cases. One demand requested the name and address of each and every person who was present at the scene at the time of the alleged crime, including the alleged victim. The State excepted to the request for names and addresses of those present at the scene of the alleged crime as not being a request properly obtainable on demand for particulars.

Appellant demanded the nature of the weapon alleged to have been used including description of the size; manufacturer, if any; serial number, if any; and the color of such weapon. The State excepted to the request for description of size, manufacturer, serial number and color as being a matter of proof at the trial and not properly available on demand for particulars.

Maryland Rule 715 a provides in pertinent part:

"On motion of the defendant, the court *may* order the filing of a bill of particulars within such time as the court may fix. * * *." (emphasis supplied)

The grant or refusal of particulars is within the sound discretion of the trial court. It is not a matter of right. *Hadder v. State,* 238 Md. 341, 350, 209 A. 2d 70 (1965). *Pearlman v. State,* 232 Md. 251, 261, 192 A. 2d 767 (1963), *cert. denied,* 376 U. S. 943 (1964), *Seidman v. State,* 230 Md. 305, 313, 187 A. 2d 109 (1962) *cert. denied,* 374 U. S. 807 (1963). The purpose of a bill of particulars is to guard against the taking of an accused by surprise by limiting the scope of the proof, *Hadder v. State, supra.* This Court will not reverse a denial of particulars unless there has been a gross abuse of discretion resulting in injury to the accused. *Pearlman v. State, supra.* It would appear, as we said in *Williams v. State,* 226 Md. 614, 619, 174 A. 2d 719 (1961), *cert. denied,* 369 U. S. 855 (1962), that the demand was calculated not so much to amplify the allegations of the indictment as to require complete disclosure by

the State of the evidence it relied upon. There is no abuse of discretion in sustaining the State's exception to a demand under such circumstances. *Williams v. State, supra.*

In general, the rule in other jurisdictions is in accord with that of Maryland. See annotation in 5 A.L.R. 2d 444, 447 (1949).

We believe the appellant was fairly apprised of the scope and nature of the charges against him. On the basis of the indictment the appellant was clearly able to prepare his defense. The language of the indictment was such as to protect him against a subsequent prosecution for the same offense. *Seidman v. State, supra.*

## II.

The motion for discovery and inspection filed by the appellant asked for copies of all written statements of three co-defendants who were charged with the same crimes with which appellant was charged. Appellant contends he is prejudiced by refusal of the lower court to require the State to submit this information.

Under Maryland Rule 728 a the State may be required to supply a copy of any written statement made by the appellant, the substance of any oral statement made by the appellant which the State proposes to produce as evidence to prove its case in chief and the substance of any oral confession made by him. No Maryland rule provides for disclosure of written statements of a co-defendant. Rule 16 of the Federal Rules of Criminal Procedure requires no such disclosure. Maryland Rule 728 was modeled on Rule 16, *Kardy v. Shook,* 237 Md. 524, 539, 207 A. 2d 83 (1965). In some respects the Maryland rule is broader than the Federal rule in that it does permit discovery as to witnesses the State proposes to call. It is to be noted that in prosecutions in the United States Courts the statement sought by appellants would be obtainable under 18 U.S.C. 3500, but not until after the witness had testified on direct examination. There is no similar statute in Maryland.

23 Am. Jur. 2d, *Depositions and Discovery,* § 316 states:

"* * *. It has been held that statements obtained from codefendants or coconspirators, even if they were

given pursuant to a subpoena, are not discoverable under Federal Criminal Rule 16."

See also annotation on the subject in 7 A.L.R. 3d 8 (1966).

A somewhat similar question was before this Court in *McKenzie v. State*, 236 Md. 597, 204 A. 2d 678 (1964). Appellant there maintained the trial court denied him equal protection and due process when it refused to order the State to produce written statements of the two complaining witnesses. This was a case involving unnatural and perverted sexual practice. There was a contention by the defense that these witnesses were accomplices and in one aspect of the opinion they were so treated for the purposes of argument, although not on the discovery issue. Judge Sybert for this Court said:

"To support his request for the statements the appellant relies on *Jencks v. United States*, 353 U. S. 657 (1957), but the Supreme Court has stated that that decision was applicable only to federal criminal prosecutions, *Palermo v. United States*, 360 U. S. 343, 345 (1959). The appellant admits in his brief that his request was beyond the scope of Maryland Rule 728 dealing with discovery in criminal cases. We have stated consistently that a request for the production of documents or statements in the possession or control of the State is within the sound discretion of the trial court. *Williams v. State*, 226 Md. 614, 174 A. 2d 719, cert. den. 369 U. S. 855 (1961); *Glaros v. State*, 223 Md. 272, 164 A. 2d 461 (1960); *Whittle v. Munshower*, 221 Md. 258, 155 A. 2d 670, cert. den. 362 U. S. 981 (1959), and see case note, 20 Md. L. Rev. 292; *State v. Haas*, 188 Md. 63, 51 A. 2d 647 (1947). Here, the defense failed to state adequate reasons for the request or to state what it was hoped the statements would show if produced. It would seem that the request was nothing more than a 'fishing expedition'. * * *. Upon the facts before us we do not believe the trial court abused its discretion." 236 Md. at 602.

In the case note mentioned, 20 Md. L. Rev. 292 (1960),

after commenting on Maryland Rule 728 and its provisions it is said:

"* * * [T]his rule is considered an exception to the general rule throughout the country, and it should be kept in mind that the matter of inspection being left to the discretion of the trial court prevents such inspection from being a matter of right. * * *." 20 Md. L. Rev. at 297.

Appellant also sought to require the State to say when and where the alleged oral statements made by appellant were made. Maryland rules do not require such disclosure.

Appellant claims prejudice in that he asked in his motion for discovery and inspection that he be furnished with reports of any experts whom the State intended to call at the trial of the case. Maryland rules require no such disclosure.

Accordingly, in each instance we conclude there was no abuse of discretion by the lower court.

## III.

Appellant claims a denial of due process of law because the testimony of two of his alleged accomplices was admitted into evidence. Willis Eugene Taylor was an admitted accomplice. Walter Ferguson denied complicity. Both testified. Appellant cites for his authority *Nash v. Illinois,* 389 U. S. 906, 19 L. Ed. 2d 223, 88 S. Ct. 222 (1967). The citation is to an opinion dissenting from the denial of certiorari by the Supreme Court of the United States.[1]

Nash was convicted of murder on the testimony of an accomplice in the crime. The accomplice was promised leniency if he testified against the petitioner. The accomplice denied on the witness stand that he had been promised anything. The prosecutor knew the testimony of the accomplice was false. The jury heard the testimony of the accomplice under the erroneous impression that no promises of leniency had been made. Subsequently, the prosecutor and counsel for the accomplice were

---

1. In fairness to counsel for the appellant, we note the comment in the brief that many of the points raised in this appeal were raised at the express request of appellant.

called as witnesses. They admitted the prosecutor had promised leniency to the accomplice if he would testify.

The dissent in *Nash* was based on the principle of *Napue v. Illinois,* 360 U. S. 264, 3 L. Ed. 2d 1217, 79 S. Ct. 1173 (1959), where it was held that the prosecutor's knowing acquiescence in the lie of a witness deprived the defendant of a fair trial under the Fourteenth Amendment, even though the jury had been apprised that the witness might have been lying about whether he had any interest in testifying.

In *Nash, supra,* Mr. Justice Fortas said:

"* * * [T]he subsequent admission by the prosecutor, later in the trial, might not adequately overcome the jury's initial impression of the testimony. Accordingly in these circumstances, I must conclude that petitioner was prejudiced by the prosecutor's acquiescence in the misrepresentation by his witness.

"* * * Especially in a capital case, a false denial by the critical State's witness that he was promised leniency in return for his testimony, knowingly acquiseced in by the prosecutor, requires reversal of a state conviction, even though the prosecutor was later compelled to admit that the denial was untrue." 389 U. S. at 907.

Since appellant has indirectly relied on *Napue v. Illinois, supra,* by his reliance on *Nash v. Illinois, supra,* it may be well to briefly discuss the facts of that case. Napue was convicted of murder on the testimony of an accomplice. During the course of his testimony the prosecutor asked the accomplice if the prosecutor or anyone else (naming several others) had promised leniency to the accomplice for his testimony. The witness said he had not been promised anything. The statement was false. The prosecutor had himself promised a recommendation for leniency, but failed to divulge the falsity of the statement of the witness. The only indication of an attempt for leniency was the testimony of the witness that some public defender would try to obtain a reduction of the sentence of the accomplice. On the basis of the false statement, the Supreme Court of the United States reversed the conviction on the ground that petitioner had

been denied due process of law in violation of the Fourteenth Amendment to the Constitution of the United States.

A consideration of the two cases results in the conclusion that the *Napue* case, *supra,* is the stricter holding of the two. In that case the jury never was cognizant of the fact that the accomplice was promised leniency. Had *Nash, supra,* been reversed, the *Napue* principle would have been broadened to include instances where a witness himself denies any promise of leniency, testifies before the jury, and is later contradicted when actual evidence is produced to show the existence of some promise of leniency.

In this case both of the alleged accomplices admitted under cross examination the reason they were testifying in this case was the State's Attorney had indicated he might be disposed to drop indictments against them.

Based on the admissions of both witnesses, this case is factually distinguishable from both *Nash* and *Napue.* The *Napue* principle is clearly inapplicable to the present circumstances. The principle espoused in the *Nash* dissent is inapplicable both because of the difference in facts as well as because the principle urged is by a dissenting minority in a case where certiorari was denied.

The testimony of Taylor and Ferguson was admissible. An accomplice is clearly competent to testify. *Howard v. State,* 238 Md. 623, 209 A. 2d 604 (1965) ; *Foster v. State,* 230 Md. 256, 259, 186 A. 2d 619 (1962) ; *Garland v. State,* 112 Md. 83, 99, 75 A. 631 (1910). See also 23 C.J.S. *Criminal Law,* § 802.

The credibility and the weight of the testimony of the accomplices was for the trier of facts. *McKenzie v. State,* 230 Md. 513, 514, 187 A. 2d 885 (1963).

## IV.

Appellant next contends that even if the testimony of the accomplices were admissible, it was uncorroborated and, therefore, the evidence produced by the State was insufficient to support the convictions of the appellant.

It has long been the rule in this State that the uncorroborated testimony of an accomplice is not sufficient to sustain a

conviction. In *McDowell v. State,* 231 Md. 205, 211, 189 A. 2d 611 (1963) Chief Judge Brune for this Court said:

"* * * [T]he corroboration need not be enough to convict exclusive of the accomplice's testimony, and * * * 'the important matter is to have * * * [the accomplice] supported in at least some of the material points involved, tending to show the guilt of the accused' * * * [in that] 'there must be corroboration of the testimony of an accomplice as to the identity of the accused with the perpetrators of the crime or the crime itself.' * * *."

Chief Judge Brune fully reviewed the authorities in that case.

The testimony of Taylor and Ferguson is here corroborated by Lewis, the store manager; Friday, the customer who identified appellant as the individual holding the pistol who took $10.00 from him; and by Frances Mitchell.

### V.

The appellant contends that the trial court erred in two instances with reference to its advisory instructions to the jury. He claims the trial court's instruction overemphasized the murder aspects of assault with intent to murder and that the court's statement to the jury describing the distinction between first and second degree murder so overemphasized the murder aspect of the charge that the appellant was denied a fair trial.

At the conclusion of its instructions the trial court asked whether or not there were any objections. Objection as to the murder aspect of the assault with intent to murder charge was made, but no objection was entered relative to the distinction between first and second degree murder. The court said in response to the objection:

"I think they can't help by knowing the man [Lt. Maskell] testified it couldn't be murder. But what do you want me to do?"

Defense counsel suggested the making of a statement that the court did not intend to emphasize any particular element in

this case and that there was no intention to overemphasize. The court indicated it would make it clear at the close of the case that the charge was assault with intent to murder. This appeared to be agreeable to counsel for the accused. Before the jury retired the court instructed the foreman to write down each case number and the charge. In No. 1803 the court said, "It charges Earl Veney with assault with intent to murder Joseph Maskell."

The appellant could not have been guilty of assault with intent to murder unless he could have been properly charged with murder had the victim died as a result of the assault.

In its original instruction the trial court said:

"The Court advises you that assault with intent to murder is an assault committed which if death had ensued as a result of the assault the perpetrator thereof would be guilty of murder in either the first or second degree. It is therefore important that you understand the legal definition of murder. Murder in either the first or second degree may be defined as the unlawful killing of another human being with malice aforethought. If it is accompanied by premeditation and deliberation it becomes murder in the first degree. But you are not concerned in this case with the technical difference between murder in the first and second degree, if you believe that had the police officer died as the result of a shooting in this case, a shooting by the defendant, that the defendant would have been guilty of murder in either the first or second degree, that is, guilty of murder, then he would be guilty under that charge or that indictment. You note that I said murder is the unlawful taking of human life with malice aforethought, therefore you should know what is meant by malice. Malice may be defined in this connection as the intentional doing of a wrongful act to another without legal excuse or justification, but malice may be inferred—that is, the intentional doing of a wrongful act may be inferred from the act itself, such

as by pointing a pistol at your heart and firing it you can infer that I intended to kill you, since I know a bullet through your heart usually results in that happening. So you can infer the intent from the act itself. But malice means, as I have said, hatred or ill will accompanied by the intentional act itself. It cannot result—if it is absent in intentional doing of the act, then malice doesn't exist and if death ensues it is not murder. It may be manslaughter or something else, but it would not be murder. In order to convict under that indictment it is necessary for you to determine from the evidence that the defendant fired a shot at the police officer under such circumstances that had the police officer died the defendant would have been guilty of murder."

The jury after deliberating requested the trial court to explain the instructions given to them with respect to the crime of assault with intent to murder. The court instructed as follows:

"* * * Now the Court tells you that you have to view the matter in the light of this: if Maskell had died as the result of an assault would the defendant then be guilty of murder in either the first or second degree. That is, guilty of murder as distinguished from manslaughter or not guilty, and to that extent it was necessary that you understand the definition of murder. As I explained to you before, murder may be defined as the feloniously taking of another human's life with malice aforethought. Now by malice I mean that the injury was intentionally inflicted; that he had an intent to cause injury, death, but that he missed the mark to the extent that death did not ensue—he lived or remained alive—but that it was wilfully and purposely done, that it wasn't accidental or anything of that nature, but as applies to this case that Veney with a deadly weapon pointed it at Lieutenant Maskell and fired a shot. Now normally it might be simple if a man says that he intends at the time he does it. There is no contention that he made any remark saying "I

intend to kill you" or anything of that—a remark such as that. But the Court tells you that you may conclude from the circumstances, infer from the act, his intentions; in other words, almost, actions speak louder than words. So as an example I gave you before, if a man points a pistol at your heart and pulls the trigger, you can infer that he intended you to die, because all of us know that the hitting of a person in a vital organ will probably reasonably result in death, or may probably reasonably result in death. So if you have— if the act is not accompanied by an expressed intention, then you have to view the act itself and conclude from the act what was intended. Now you just have to consider it in that light. But the charge itself is not murder. The charge is an assault accompanied by an intention to cause the death under such circumstances that if the person had died the defendant would be guilty of murder in either the first or second degree; that if he died there was the necessary ingredient of an intentional killing with malice aforethought, but that death did not ensue in this case and therefore the assault with intent to commit murder."

Counsel for the appellant immediately after it was given said he had no objection to this last instruction.

We think the trial court fairly and correctly stated the applicable law in its charge.

## VI.

The jury after the second instruction above noted was given returned yet a second time. It asked whether Walter Ferguson said he saw appellant shoot the officer. Over the objection of appellant the court reporter read back to the jury the direct and cross-examination of Ferguson on this point. Appellant contends in this Court that the reading of this testimony to the jury unduly emphasized Ferguson's testimony.

In 5 Wharton, *Criminal Law and Procedure*, § 2110 (Anderson edition) (1957) it is said:

"The court has power in its discretion to recall a witness that he may repeat testimony as to which the

jury are in doubt, or to allow new evidence to be taken on a question of fact on which they are in doubt.

"The trial judge within his discretion may permit the reading to the jury of the official court stenographer's notes of the testimony at the trial, or may refuse permission so to do. The discretion is a reasonable or judicial one and it has been recognized that cases may arise in which it would be error to refuse to have the reporter's notes, or a portion of them, read to the jury. * * *.

"Generally, the mere fact that only a portion of the testimony taken down by the court reporter in a criminal case was read to the jury is not in and of itself regarded as error or as ground for reversal of a judgment of conviction. *The fact that the testimony of only some of the witnesses is read to the jurors is not error as against the contention that it gave the testimony of those witnesses undue prominence in the minds of the jurors. * * *.*

"Ordinarily the request for the reading of the stenographic notes comes from the jury. * * *." (emphasis supplied)

See also *Gregory v. U. S.,* 365 F. 2d 203 (8th Cir. 1966), *cert. den.,* 385 U. S. 1029, 17 L. Ed. 2d 676, 87 S. Ct. 759 (1967). Also see annotation "Right to Have Reporters Notes Read to Jury," 50 A.L.R. 2d 176, 192 (1956) dealing specifically with a request for less than all of the testimony.

We find no abuse of the discretion of the trial court in having read to the jury that portion of the testimony of the witness Ferguson requested by the jury.

## VII.

Appellant contends there was legally insufficient evidence to convict him of assault with intent to murder Lt. Maskell, of robbery with a deadly weapon of Leo Lewis and Clarence Friday, and of common law assault on John Drake.

The case having been tried before a jury, the Court of Appeals does not weigh the evidence presented to the jury, but

only determines its sufficiency to take a particular issue, or the entire case, to the jury. *Ramsey v. State,* 239 Md. 561, 566, 212 A. 2d 319 (1965). To set aside the jury's verdict we must be able to say there was no legally sufficient evidence from which the jury could find him guilty beyond a reasonable doubt. *Pressley v. State,* 244 Md. 664, 667, 224 A. 2d 866 (1966).

In 1 Wharton, *Criminal Law and Procedure,* § 90 (Anderson edition) (1957) the statement is made:

> "* * *. Each conspirator is responsible for everything done by his confederates which follows incidentally as one of the probable and natural consequences in the execution of the common design, even though such a consequence was not intended as a part of the original design or common plan. Thus, if several persons come armed to a house with intent to commit an affray or a personal outrage, such affray or outrage having bloodshed as a probable incident, and a homicide ensues while the assailants are engaged in such illegal proceedings, then even those who may not actually participate in the overt act of outrage will be principals in the homicide. * * *."

There was ample evidence before the jury from which it could conclude that a robbery of Leo Lewis and Clarence Friday did in fact take place, and that Lt. Maskell was shot as a direct result of that robbery.

Murder committed in the perpetration of or attempt to perpetrate any robbery is murder in the first degree. Code (1967 Repl. Vol.), Art. 27, § 410. At common law a killing in the perpetration of a robbery was murder, regardless of intent. Had death ensued in this instance, a finding by the jury that the killing was in perpetration of a robbery would have supported a verdict of first degree murder. *Stansbury v. State,* 218 Md. 255, 260, 146 A. 2d 17 (1958).

Appellant contends the State failed to establish an assault and failed to establish that there was an assault made with an attempt to murder. He further contends that without those elements there was insufficient evidence to convict of the crime of

assault with intent to murder. In *Tate v. State,* 236 Md. 312, 317, 203 A. 2d 882 (1964) we said:

"* * *. He argues that he had no intention of murdering Butler since he only shot him with one of seventeen bullets. This argument presumes that a specific intent to kill is necessary for his conviction. This Court has stated that the essence of the offense of assault with intent to murder is intent, so that if the intent is carried out, the resulting crime would have to be either first degree or second degree murder, had the victim died. *Marks v. State,* 230 Md. 108, 185 A. 2d 909. Specific intent to kill is not a necessary element for conviction of assault with intent to murder. The essential distinction between murder and manslaughter is the presence or absence of malice, which is the intentional doing of a wrongful act to another without legal excuse or justification. The inference of malice may be drawn from the fact of the use of a deadly weapon directed at a vital part of the body. *Chisley v. State,* 202 Md. 87, 95 A. 2d 577. The law presumes that in the absence of justification, excuse or some circumstances of mitigation, all homicides are committed with malice and constitute murder. This presumption also applies to cases of assault with intent to commit murder. *Davis v. State,* 204 Md. 44, 102 A. 2d 816. Here the defendant testified that he intended to shoot the victim in the side and did in fact shoot him in the stomach. He intended and did commit grievous bodily harm, with no attendant circumstances of justification, excuse or mitigation. If the intent was to commit grievous bodily harm and death had occurred in consequence of the attack, then the offense would have been at least murder in the second degree. It was not necessary that a specific intent to take life be shown. *Webb v. State,* 201 Md. 158, 93 A. 2d 80; and in case of death not ensuing, it would be assault with intent to commit murder."

There was evidence from which the jury could conclude that

appellant shot Lt. Maskell and that the reason he shot him was to effect the release of his brother, Samuel Veney, who had been apprehended in the course of a joint robbery. Accordingly the jury could conclude that appellant intended and did commit grievous bodily harm, with no attendant circumstances of justification, excuse or mitigation. Therefore, there was ample evidence before the jury upon which it could bring in a verdict of guilty of assault with intent to murder from the nature of the assault itself, without reference to the fact that it also happened to be in perpetration of a robbery.

Appellant contends on the common law assault of John Drake that there was no evidence which showed "an overt act with intent to injure," and, therefore, insufficient evidence to be the basis of a conviction of that crime.

In 6 Am. Jur. 2d, *Assault and Battery,* § 3 it is said:

> "Generally speaking, an assault is a demonstration of an unlawful intent by one person to inflict immediate injury on the person of another then present. Although physical contact is not an essential element, violence, threatened or offered, is. Assault is frequently defined as an intentional attempt by a person, by force or violence, to do an injury to the person of another, and as any attempt to commit a battery, or *any threatening gesture showing in itself* or by words accompanying it *an immediate intention, coupled with a present ability, to commit a battery. It has also been defined as any unlawful attempt or offer, with force or violence, to do a corporal [sic] hurt to another, whether from malice or wantonness,* and *as an unlawful offer of corporeal injury to another by force, or force unlawfully directed to the person of another, under such circumstances as to create a well-founded fear of immediate peril."* (emphasis supplied)

In 1 Wharton, *Criminal Law and Procedure,* §§ 331 and 332 (Anderson edition) (1957) the comment is made:

> "It is not necessary to the commission of an assault that the assailant manifest an absolute intention to inflict physical injury on the person assailed. *An as-*

sault is committed when the assailant purposes to inflict injury unless a condition which he has no right to impose is complied with by the person assailed. In other words, one who intentionally puts another in apprehension of an immediate injury is guilty of an assault, although he gives him the opportunity to escape the harm or injury by obeying a stated command. * * * Moreover, whenever the infliction of harm is threatened unless the victim does a specified act, an assault is committed even though the act is done by the victim and no harm is inflicted. * * *.

"In order to constitute an assault there must be an overt act or an attempt, or the unequivocal appearance of an attempt, with force and violence, to do such an act as will convey to the mind of the other person a well-grounded apprehension of personal injury. * * * Threats of great bodily harm, accompanied by acts showing a formed intention of putting them into execution, if intended to put the person threatened in fear of their execution, and if they have that effect and are calculated to produce that effect upon a person of ordinary firmness, constitute a criminal assault. * * *."

Drake was directed at gun point to place his hands on the counter. Accordingly, it is concluded that there was evidence from which the jury could reasonably find an assault upon John Drake.

## VIII.

Appellant contends that the State's Attorney for Frederick County was guilty of making a highly prejudicial statement to the jury in his closing argument and that the lower court erred in not declaring a mistrial.

Appellant's version of the statement as set forth by his counsel in a colloquy at the bench was:

"* * * He made the statement the defendant has nobody to give evidence, which I think is improper and I think along the line the jury should know it is not a proper statement. * * * He can say the evidence is uncontradicted or corroborated, but he can't say the

defendant has failed to produce, because we have no duty to produce * * * I think you can't comment at all on the failure of the defendant to produce evidence. He doesn't have to do anything. * * * You cannot comment on failing to produce evidence."

There was no motion for mistrial. The court made inquiry as to what defense counsel wanted the court to do and was informed:

"Tell them he doesn't have any burden to produce anything, he can rely on the State to produce its evidence, he can rely strictly on the evidence of the State. In the end, I mean Your Honor."

In response to this request the court said:

"Members of the jury, objection has been made to a remark of Mr. Rothenhoefer when he stated that the defense had called no witnesses. The Court therefore will again advise you that the burden does not rest upon the defendant to disprove any charge. The burden rests upon the State to satisfy you beyond reasonable doubt as to the guilt of accused."

Appellant cites in support of his position the cases of *Griffin v. California*, 380 U. S. 609, 14 L. Ed. 2d 106, 85 S. Ct. 1229 (1965); *Tehan v. United States*, 382 U. S. 406, 15 L. Ed. 2d 453, 86 S. Ct. 459 (1966); and *Chapman v. California*, 386 U. S. 18, 17 L. Ed. 2d 705, 87 S. Ct. 824, *rehearing denied*, 386 U. S. 987, 18 L. Ed. 2d 241, 87 S. Ct. 1283 (1967). In *Griffin* petitioner was convicted of murder in the first degree after a jury trial in a California court. He did not testify at his trial on the issue of guilt. He did testify at the separate trial on the issue of penalty.[2] The trial judge commented on defendant's failure to testify. The prosecutor commented pointedly and sharply on the failure of the accused to testify. Both comments were permitted by Article 1, Section 13 of the California Constitution. The Supreme Court held these comments to be a

2. Under California Code provisions, separate trials are provided for on the two issues.

violation of the self incrimination clause of the Fifth Amendment to the Constitution of the United States which was made applicable to the states by the Fourteenth Amendment in *Malloy v. Hogan*, 378 U. S. 1, 12 L. Ed. 2d 653, 84 S. Ct. 1489 (1964). *Tehan* merely decided that the rule enunciated in *Griffin v. California, supra,* need not be retrospective in its application. In *Chapman,* the Supreme Court enunciated the rule:

> "* * * [B]efore a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt. * * *." 386 U. S. at 24.

Applying that standard, the Supreme Court held the violation of the Griffin rule in *Chapman* (California case) harmful, stating:

> "* * * [T]he state prosecutor's argument and the trial judge's instructions to the jury continuously and repeatedly impressed the jury that from the failure of petitioners to testify, to all intents and purposes, the inferences from the facts in evidence had to be drawn in favor of the State—in short, that by their silence petitioners had served as irrefutable witnesses against themselves. And though the case in which this occurred presented a reasonably strong 'circumstantial web of evidence' against petitioners * * * it was also a case in which, absent the constitutionally forbidden comments, honest, fairminded jurors might very well have brought in not-guilty verdicts. * * *." 386 U. S. at 25.

It is clear that in Maryland comment upon a defendant's failure to testify in a state criminal trial was forbidden long prior to *Griffin v. California, supra.* See footnote 4, *Schiller v. Lefkowitz,* 242 Md. 461, 470, 219 A. 2d 378 (1965), *cert. denied,* 385 U. S. 947 (1966); *Barber v. State,* 191 Md. 555, 566, 62 A. 2d 616 (1948); *King v. State,* 190 Md. 361, 373, 58 A. 2d 663 (1948).

The comment here made is similar to that in *King v. State,*

*supra,* where the State's Attorney was quoted as saying to the jury:

> "* * * [T]here had never been any evidence to refute the fact that these illegal machines were in Mr. King's place or not—" 190 Md. at 373.

Our predecessors said:

> "* * *There is nothing to suggest that the state's attorney was commenting on his failure to testify. We are of opinion that this statement by the state's attorney was not a violation of the Constitutional provision or statute law. * * *." 190 Md. at 374.

See also the annotation in 68 A.L.R. 1108, 1127 (1930), where remarks similar to those made here by the Frederick County State's Attorney have been held not to be the same as commenting on the accused's failure to testify.

Assuming, *arguendo,* that the remarks by the State's Attorney were tantamount to a comment that the appellant failed to take the stand, the instruction was appropriate to cure the alleged improper remarks of the State's Attorney. This case is similar to *Smith v. State,* 169 Md. 474, 182 A. 287 (1936). Judge Parke for this Court said:

> "The state's attorney, in the course of his argument to the jury, turned, and, pointing to the traverser, said:
>
> 'This prosecuting witness has testified that this defendant is the father of her child, and this defendant has sat here all during the trial and has not denied his fatherhood.'
>
> "There can be no question of the impropriety of this remark, and it was susceptible of the inference by the jury that they were to consider the silence of the traverser in the face of the accusation of the prosecuting witness as an indication of his guilt. * * *.
>
> "But error, without prejudice, is not sufficient for reversal. As soon as the statement was made, an objection was noted, and a motion was made by the traverser that a juror be withdrawn and a mistrial be

declared. The court immediately heard counsel and denied the motion, but did it upon the ground that no prejudice had resulted, and fully, correctly, and impressively advised the jurors of the privilege of the accused not to testify and that they were not at liberty to entertain or make any presumption against the traverser from his neglect or refusal to testify, * * *.

"The error was followed so closely by its adequate correction at the hands of the court that the minds of the jurors could not have been prejudiced against the accused by the remark. The corrective method employed by the court had the tendency, in point of fact, to cause, under the circumstances stated, a reaction in favor of the traverser, because of the emphasis given to the duty of the jurors not to entertain any presumption against the accused because of his absence from the stand. The statement from the bench was particularly helpful to the traverser, since no witness was offered by the defense, and his reliance was upon the presumption of his innocence. Finding no adequate basis for the conclusion that the jurors were misled or influenced to the prejudice of the accused by the improper comment, the *nisi prius* court was not justified in granting a mistrial. * * *." 169 Md. at 476.

If there were in fact error on the part of the trial court, we hold such error to be harmless beyond a reasonable doubt. The admonition to the jury by way of correction of the statement of the State's Attorney was plain, terse and easily understood. It was made immediately prior to the instruction to the jury as to the form of the verdict, which was short. The instruction as to the form of the verdict under our practice is made immediately before the jury retires to consider the case. Accordingly, paraphrasing the language of Judge Parke, we would believe the corrective method employed by the Court had the tendency, in point of fact, to cause, under the circumstances stated, a reaction in favor of appellant. Moreover, in this case there is not the situation present in *Chapman, supra,* where: "* * * honest, fair minded jurors might very well have brought in not-guilty

182

verdicts * * *." The evidence against appellant was so overwhelming we believe any honest, fair minded jury would have been obliged to bring in a guilty verdict. Therefore, if there was error, we can say beyond a reasonable doubt that it was not harmful error.

*Judgments affirmed.*