# ANTHONY WILSON CAMPBELL *v.* STATE OF MARYLAND

[No. 63, September Term, 1981.]

*Decided May 14, 1982.*

The cause was argued before MURPHY, C. J., and SMITH, DIGGES, ELDRIDGE, COLE, DAVIDSON and RODOWSKY, JJ.

*Victoria S. Keating, Assistant Public Defender,* with whom was *Alan H. Murrell, Public Defender,* on the brief, for appellant.

*Stephen B. Caplis, Assistant Attorney General,* with whom was *Stephen H. Sachs, Attorney General,* on the brief, for appellee.

DAVIDSON, J., delivered the opinion of the Court.

This case concerns the criminal responsibility of felons for the lethal acts of others. More particularly, it presents the question whether, under Maryland Code (1957, 1982 Repl. Vol.), Art. 27, § 410, Maryland's so-called "felony-murder" statute, the killing of a co-felon during an armed robbery, by either a police officer attempting to apprehend him, or by a victim resisting the armed robbery, constitutes murder in the first degree on the part of the surviving felon.

On 5 February 1980, in the Criminal Court of Baltimore, the appellant, Anthony Wilson Campbell, pled guilty to first degree felony murder of a co-felon, assault with intent to murder a victim, and robbery of the same victim with a deadly weapon. A factual statement presented as the basis for the guilty pleas showed that on 19 September 1979, at approximately 12 midnight, the appellant and Rufus Branch (co-felon) entered a taxicab operated by Paul Alston (victim).

The appellant sat in the back seat of the taxicab and the co-felon sat in the front seat. After requesting the victim to drive to a street in an area of deserted buildings, the co-felon pulled out a small caliber handgun, pointed it at the victim, and said, "This is a stick up." The co-felon then ordered the victim to hand him his money bag. The appellant said, "Do what he tells you. I have a gun too." The victim handed his money bag and his wallet to the co-felon and then looked at both the co-felon and the appellant. The appellant said, "He's seen our faces; we have to take him somewhere and kill him."

As the victim drove up the street, he saw two police cars. The victim drove alongside the police car of Officer Cruse and slammed on his brakes. At that point, the co-felon opened fire at the victim who returned the fire with his own handgun. Both the victim and the co-felon were wounded. Officer Heiderman, then on foot patrol, came to the victim's assistance and shot at the co-felon. The co-felon and the appellant then left the taxicab and began to run. The appellant hid in the vestibule of a nearby building.

Officer Heiderman and Officer Cruse chased the co-felon and ordered him to halt. The co-felon continued to run. Officer Heiderman hid behind a truck to reload his weapon. When Officer Heiderman emerged, the co-felon suddenly appeared from behind a vehicle and pointed his gun toward the officer. Officer Cruse shouted a warning to Officer Heiderman, who turned and shot the co-felon approximately four times. The co-felon fell to the ground, dead. An autopsy report revealed nine bullet wounds, five of which were potentially lethal. At least two of the nine wounds were inflicted by the victim. Under these circumstances, it is unclear whether the co-felon was killed by the victim or by the police officer.

A third police officer, Officer Steinman, arrested the appellant in the vestibule where he was hiding. After searching the appellant and finding that he did not have any weapons, Officer Steinman walked the appellant back to the victim's taxicab. At that time, the victim identified the

appellant as one of his assailants. The victim's money bag
and his wallet were found in the gutter of the street directly
between the taxicab and the vestibule in which the appel-
lant was found.

The trial court accepted the appellant's guilty pleas.
Thereafter, the trial court convicted the appellant of first
degree murder, assault with intent to murder, and robbery
with a deadly weapon, and sentenced him to concurrent
terms of life (all but 15 years suspended), 15 years, and 10
years respectively. The appellant appealed to the Court of
Special Appeals. We issued a writ of certiorari before con-
sideration by that Court.

Maryland Code, Art. 27, §§ 407-410 provide that certain
types of murder shall be murder in the first degree. More
particularly, § 410 provides in pertinent part:

> "All murder which shall be committed in the per-
> petration of, or attempt to perpetrate . . . robbery . . .
> shall be murder in the first degree."

All murder not specified in §§ 407-410 is murder in the
second degree. § 411. These sections do not create any new
statutory crimes, but rather divide the crime of murder, as
known at common law, into degrees. *Jackson v. State,* 286
Md. 430, 435-36, 408 A.2d 711, 715 (1979); *State v. Frye,* 283
Md. 709, 712-13, 393 A.2d 1372, 1373-74 (1978); *Davis v.
State,* 39 Md. 355, 374 (1874).

With respect to the crime of murder as known at common
law, this Court has recently stated in *Jackson v. State,* 286
Md. 430, 408 A.2d 711 (1979):

> "At the common law, to which the inhabitants of
> Maryland are entitled, Md. Const. Declaration of
> Rights, Art. 5, homicide is the killing of a human
> being by another human being; criminal homicide
> is homicide without lawful justification or excuse;
> criminal homicide with malice aforethought is
> murder; malice aforethought is established, *inter
> alia,* upon commission of criminal homicide in the

> perpetration of, or in the attempt to perpetrate, a felony. *Thus, at common law, homicide arising in the perpetration of, or in the attempt to perpetrate, a felony is murder whether death was intended or not, the fact that the person was engaged in such perpetration or attempt being sufficient to supply the element of malice.* 'The [felony-murder] doctrine has repeatedly been recognized and applied in this country, and is to be regarded as still in force, except where it has been expressly abrogated by statute.' [1] The doctrine has not been abrogated by statute in this State." *Jackson,* 286 Md. at 435-36, 408 A.2d at 714-15 (footnote omitted) (citations omitted) (emphasis added).

This Court has held that under the felony-murder doctrine a participating felon is guilty of murder when a homicide has been committed by a co-felon. *Stevens v. State,* 232 Md. 33, 41, 192 A.2d 73, 78, *cert. denied,* 375 U.S. 886, 84 S.Ct. 160 (1963); *Boblit v. State,* 220 Md. 454, 457, 154 A.2d 434, 435 (1959), *appeal dismissed sub nom. Brady v. State,* 222 Md. 442, 160 A.2d 912 (1960); *Shockley v. State,* 218 Md. 491, 497, 148 A.2d 371, 374 (1959); *see Veney v. State,* 251 Md. 159, 174, 246 A.2d 608, 617 (1968), *cert. denied,* 394 U.S. 948, 89 S.Ct. 1284 (1969); *see also Mumford v. State,* 19 Md. App. 640, 643-44, 313 A.2d 563, 566 (1974). We have also held that under the felony-murder doctrine a participating felon is guilty of murder when a hostage is accidentally killed by a police officer attempting to apprehend robbers fleeing from the scene of an armed robbery. *Jackson,* 286 Md. at 442-43, 408 A.2d at 718-19. However, this Court has not previously considered whether under the felony-murder doctrine a participating felon is guilty of murder when, during an armed robbery, a police officer kills a fleeing co-felon in an attempt to apprehend him, or a victim kills a co-felon in an attempt to resist the armed robbery.

---

1. We note that in 1980, the Supreme Court of Michigan, exercising its "role in the development of the common law," abrogated the common law felony-murder doctrine. People v. Aaron, 409 Mich. 672, 733, 299 N.W.2d 304, 329 (1980).

Courts in a majority of the jurisdictions in which the question has been considered have held that under the felony-murder doctrine a participating felon is not guilty of murder when the killing is done by a person other than the participating felon or his co-felons. *E.g., People v. Antick,* 15 Cal.3d 79, 87, 539 P.2d 43, 48, 123 Cal.Rptr. 475, 480 (1975); *People v. Gilbert,* 408 P.2d 365, 373, 47 Cal.Rptr. 909, 917 (1965), *vacated on other grounds,* 388 U.S. 263, 87 S.Ct. 1951 (1967); *People v. Washington,* 402 P.2d 130, 133-34, 44 Cal.Rptr. 442, 445-46 (1965); *Alvarez v. District Court In & For the City & County of Denver,* 186 Colo. 37, 38-39, 525 P.2d 1131, 1131-32 (1974); *Commonwealth v. Moore,* 121 Ky. 97, 98-100, 88 S.W. 1085, 1086 (1905); *Commonwealth v. Balliro,* 349 Mass. 505, 514-15, 209 N.E.2d 308, 314 (1965); *Commonwealth v. Campbell,* 89 Mass. 541, 544-46 (1863); *People v. Austin,* 370 Mich. 12, 30-31, 120 N.W.2d 766, 774-75 (1963); *Sheriff, Clark County v. Hicks,* 506 P.2d 766, 768 (Nev. 1973); *State v. Canola,* 73 N.J. 206, 226, 374 A.2d 20, 30 (1977); *People v. Wood,* 8 N.Y.2d 48, 50, 167 N.E.2d 736, 738-39, 201 N.Y.S.2d 328, 331-33 (1960); *State v. Oxendine,* 187 N.C. 658, 661-62, 122 S.E. 568, 570 (1924); *Commonwealth ex rel. Smith v. Myers,* 438 Pa. 218, 227-35, 261 A.2d 550, 555-58 (1970); *Commonwealth v. Redline,* 391 Pa. 486, 495-96, 137 A.2d 472, 476 (1958), *see* Annot. 56 A.L.R.3d 239 (1974). The rationale underlying this rule is the "agency" theory of felony murder.

A classic statement of the agency theory appears in *Commonwealth v. Campbell,* 89 Mass. 541 (1863). There, the accused was participating in a riot growing out of the enforcement of a draft of men for the army. The question presented was whether under the felony-murder doctrine, the rioter could be guilty of murder if another person was killed by a soldier attempting to resist the mob's attack. The Supreme Court of Massachusetts stated:

"There can be no doubt of the general rule of law, that a person engaged in the commission of an unlawful act is legally responsible for all the consequences which may naturally or necessarily flow from it, and that, if he combines and confederates

with others to accomplish an illegal purpose, he is liable *criminaliter* for the acts of each and all who participate with him in the execution of the unlawful design. *As they all act in concert for a common object, each is the agent of all the others, and the acts done are therefore the acts of each and all.*

. . .

[T]he rule of criminal responsibility for the acts of others is subject to the reasonable limitation that the particular act of one of a party for which his associates and confederates are to be held liable must be shown to have been done *for the furtherance or in prosecution of the common object and design* for which they combined together. Without such limitation, a person might be held responsible for acts which were not the natural or necessary consequences of the enterprise or undertaking in which he was engaged, and which he could not either in fact or in law be deemed to have contemplated or intended. *No person can be held guilty of homicide unless the act is either actually or constructively his, and it cannot be his act in either sense unless committed by his own hand or by some one acting in concert with him or in furtherance of a common object or purpose.* Certainly that cannot be said to be an act of a party in any just sense, or on any sound legal principle, which is not only not done by him, or by any one with whom he is associated or connected in a common enterprise, or in attempting to accomplish the same end, *but is committed by a person who is his direct and immediate adversary, and who is, at the moment when the alleged criminal act is done, actually engaged in opposing and resisting him and his confederates and abettors in the accomplishment of the unlawful object for which they are united.*

. . .

> The real distinction is between acts which a man does either actually or constructively, by himself or his agents or confederates, and those which were done by others acting not in concert with him or to effect a common object, but without his knowledge or assent, either express or implied. For the former the law holds him strictly responsible, and for all their necessary and natural consequences, which he is rightfully deemed to have contemplated and intended. For the latter he is not liable, because they are not done by himself or by those with whom he is associated, and no design to commit them or intent to bring about the results which flow from them can be reasonably imputed to him." *Campbell,* 89 Mass. at 543-44, 544-45, 546 (emphasis added).

Courts in some jurisdictions that have considered the precise question here have relied on the agency theory and have held that a participating felon is not guilty of murder when a police officer kills a fleeing co-felon while attempting to apprehend him. *E.g., Antick,* 15 Cal.3d at 90-91, 539 P.2d at 50, 123 Cal.Rptr. at 482; *Gilbert,* 408 P.2d at 373, 47 Cal.Rptr. at 917; *Redline,* 391 Pa. at 495-96, 137 A.2d at 476-77. Thus, in *Commonwealth v. Redline,* 391 Pa. 486, 137 A.2d 472 (1958), a felon and his co-felon were fleeing from the scene of an armed robbery when a police officer, attempting to apprehend them, killed the co-felon. Manifestly, the police officer's killing of the co-felon was committed to thwart the felony rather than to further it. The Supreme Court of Pennsylvania, employing the agency theory, stated:

> "The mere coincidence of homicide and felony is not enough to satisfy the requirements of the felony-murder doctrine. It is necessary * * * to show that the conduct causing death was done in furtherance of the design to commit the felony.

. . .

> [I]n order to convict for felony-murder, *the killing must have been done by the defendant or by an accomplice or confederate or by one acting in furtherance of the felonious undertaking."* Redline, 391 Pa. at 495-96, 137 A.2d at 476 (emphasis in original).

That Court reversed the surviving felon's conviction of first degree murder.

Similarly, courts in some jurisdictions have held that under the felony-murder doctrine a participating felon is not guilty of murder when a victim kills a co-felon during the commission of a felony. *E.g., Washington,* 402 P.2d at 133, 44 Cal.Rptr. at 445; *Austin,* 370 Mich. at 32-33, 120 N.W.2d at 775; *Hicks,* 506 P.2d at 768; *Canola,* 73 N.J. at 226, 374 A.2d at 30. More particularly, in *Sheriff, Clark County v. Hicks,* 506 P.2d 766 (Nev. 1973), the victim of an attempted murder, in an effort to resist the perpetration of the crime, fatally shot one of three co-felons. As in *Redline,* the victim's killing of the co-felon was committed to thwart the felony rather than to further it. The Supreme Court of Nevada, employing the agency theory, stated:

> "[T]he felony-murder rule does not apply when the killing is done by the victim of the crime, because in such a case the malice aforethought necessary for murder is not attributable to the accomplice felon. The killing in such an instance is done, not in the perpetration of, or an attempt to perpetrate, a crime, but rather in an attempt to thwart the felony." *Hicks,* 506 P.2d at 768.

That Court determined that the surviving felon was not guilty of murder.

In at least one jurisdiction, it has been held that under the felony-murder doctrine a participating felon is not guilty of murder when a bystander kills a co-felon fleeing from the scene of a felony. In *People v. Wood,* 8 N.Y.2d 48, 167 N.E.2d 736, 201 N.Y.S.2d 328 (1960), the surviving felon and his co-felons, while patronizing a tavern, became embroiled in

the near-fatal shooting of another party and a gun battle with an approaching police officer. When the felons attempted to escape, the owner of the tavern, in an effort to assist the police officer, killed one of the felons. As in *Redline,* and *Hicks,* the bystander's killing of the co-felon was committed to thwart the felony rather than to further it. The Court of Appeals of New York, employing the agency theory, stated:

> "Thus, a felony murder embraces not any killing incidentally coincident with the felony but only those committed by one of the criminals in the attempted execution of the unlawful end. Although the homicide itself need not be within the common design, the *act* which results in death must be in furtherance of the unlawful purpose." *Wood,* 8 N.Y.2d at 51, 167 N.E.2d at 738, 201 N.Y.S.2d at 332 (citations omitted) (emphasis in original).

That Court determined that the surviving felon was not guilty of murder.

Courts in still other jurisdictions have considered whether under the felony-murder doctrine a participating felon is guilty of murder when a person other than a co-felon has been killed during the commission of a felony. Such courts have held that under that doctrine a participating felon is not guilty of murder when a police officer attempting to thwart the felony accidentally kills the victim, *e.g., Alvarez,* 186 Colo. at 38-39, 525 P.2d at 1131-32; *Balliro,* 349 Mass. at 515, 209 N.E.2d at 314, and when a police officer attempting to thwart the felony accidentally kills another police officer, *e.g., Myers,* 438 Pa. at 227-35, 261 A.2d at 555-58. Additionally, courts in some jurisdictions have held that under the felony-murder doctrine a participating felon is not guilty of murder when a victim, attempting to resist the perpetration of the felony, accidentally kills an innocent bystander, *Moore,* 121 Ky. at 98-100, 88 S.W. at 1086; *Oxendine,* 187 N.C. at 661-62, 122 S.E. at 570.

Courts in some jurisdictions have held that under the felony-murder doctrine a participating felon is guilty of

murder when a killing is committed by a person other than the accused felon or his co-felons. *E.g., State v. Wright,* 379 So.2d 96, 96 (Fla. 1979); *People v. Hickman,* 59 Ill.2d 89, 94, 319 N.E.2d 511, 513 (1974), *cert. denied,* 421 U.S. 913, 95 S.Ct. 1571 (1975); *State v. Moore,* 580 S.W.2d 747, 752 (Mo. 1979); *Blansett v. State,* 556 S.W.2d 322, 325-26 (Tex.Crim.App. 1977); *Miers v. State,* 157 Tex.Crim. 572, 577, 251 S.W.2d 404, 408 (1952). The rationale underlying this rule is the "proximate cause" theory of felony murder.

A statement of the proximate cause theory appears in *Miers v. State,* 157 Tex.Crim. 572, 251 S.W.2d 404 (1952). There, a victim of an attempted robbery accidentally killed himself while he was attempting to resist the perpetration of the felony. Quoting from *Taylor v. State,* 41 Tex.Crim. 564, 572, 55 S.W. 961, 964 (1900), the Court of Criminal Appeals of Texas stated:

> "The whole question here is one of causal connection. If the appellant here set in motion the cause which occasioned the death of deceased, we hold it to be a sound doctrine that he would be as culpable as if he had done the deed with his own hands." *Miers,* 157 Tex. Crim. at 578, 251 S.W.2d at 408.

That Court determined that the accused felon was guilty of murder.

This statement was amplified in *People v. Hickman,* 59 Ill.2d 89, 319 N.E.2d 511 (1974), *cert. denied,* 421 U.S. 913, 95 S.Ct. 1571 (1975). There, a police officer killed another police officer while attempting to apprehend co-felons fleeing from the scene of a burglary. Quoting from *People v. Payne,* 359 Ill. 246, 255, 194 N.E. 539, 543 (1935), a case in which a victim resisting a robbery was killed by a co-felon, the Supreme Court of Illinois stated:

> "It reasonably might be anticipated that an attempted robbery would meet with resistance, during which the victim might be shot either by himself or someone else in attempting to prevent

the robbery, and those attempting to perpetrate the robbery would be guilty of murder." *Hickman,* 59 Ill.2d at 93, 319 N.E.2d at 513.

That Court determined that the accused felon was guilty of murder.

Employing the proximate cause theory, courts in these jurisdictions have held that under the felony-murder doctrine a participating felon is guilty of murder not only when a police officer attempting to thwart a felony accidentally kills another police officer, *e.g., Hickman,* 59 Ill.2d at 94, 319 N.E.2d at 513; *Johnson v. State,* 386 P.2d 336, 340 (Okla.Crim.App. 1963); *Blansett,* 556 S.W.2d at 325-26, or when a victim, attempting to resist the felony, accidentally kills himself, *e.g., Miers,* 157 Tex.Crim. at 577, 251 S.W.2d at 406, or when a bystander, attempting to thwart the perpetration of the felony, accidentally kills another bystander, *Moore,* 580 S.W.2d at 752, but also when a police officer kills a fleeing co-felon while attempting to apprehend him, *e.g., Wright,* 379 So. 2d at 96.[2]

The present trend has been for courts to employ the agency theory and to limit criminal culpability under the felony-murder doctrine to lethal acts committed by the felons themselves or their accomplices, and not to employ the proximate cause theory to extend criminal culpability for lethal acts of nonfelons. *Canola,* 73 N.J. at 224-25, 374 A.2d

**2.** The Supreme Court of California has held that under the felony-murder doctrine a participating felon is not guilty of murder when a killing is committed by a nonfelon. *Antick,* 15 Cal.3d at 86-88, 90-91, 539 P.2d at 47-48, 50, 123 Cal.Rptr. at 479-80, 482; *Gilbert,* 408 P.2d at 374, 47 Cal.Rptr. at 917; *Washington,* 402 P.2d at 132-33, 44 Cal.Rptr. at 444-45. That Court, however, employing a unique theory of vicarious liability, has held that under certain circumstances a participating felon may be guilty of murder when a killing is committed by a nonfelon. Taylor v. Superior Court of Alameda, 3 Cal.3d at 578, 582-85, 477 P.2d 131, 133-35, 91 Cal.Rptr. 275, 277-79 (1970), *rev'd on other grounds sub nom.* People v. Taylor, 12 Cal.3d 686, 698, 527 P.2d 622, 630, 117 Cal.Rptr. 70, 78 (1974); *Gilbert,* 408 P.2d at 373-74, 47 Cal.Rptr. at 917-18; *Washington,* 402 P.2d at 133-34, 44 Cal.Rptr. at 445-46. However, even under California's vicarious liability theory, a participating felon is not guilty of murder when, as here, a co-felon who initiates a gun battle is himself killed by a nonfelon. *Antick,* 15 Cal.3d at 86-91, 539 P.2d at 49-50, 123 Cal.Rptr. at 481-82. Accordingly, we need not consider California's vicarious liability theory here.

at 29. Thus, courts in several jurisdictions have recently abandoned the proximate cause theory upon which they previously relied and have substituted the agency theory. Such courts now hold that under the felony-murder doctrine, criminal culpability is limited to lethal acts committed by felons and their accomplices and does not extend to the lethal acts of nonfelons. *E.g., Canola,* 73 N.J. at 210-11, 224-25, 374 A.2d at 22, 29 (agency); *State v. Burton,* 130 N.J.Super. 174, 177-81, 325 A.2d 856, 858-59 (1974) (proximate cause); *Commonwealth v. Thomas,* 382 Pa. 639, 642-45, 117 A.2d 204, 205-06 (1955) (proximate cause), overruled by *Redline,* 391 Pa. at 507-08, 137 A.2d at 476, 482 (agency); *Commonwealth v. Almeida,* 362 Pa. 596, 607-25, 68 A.2d 595, 601-10 (1949), *cert. denied,* 339 U.S. 924, 70 S.Ct. 614 (1950) (proximate cause), overruled by *Myers,* 438 Pa. at 227-35, 261 A.2d at 555-57, 58 (agency); *see People v.Austin,* 370 Mich. 12, 27-33, 120 N.W.2d 766, 773-74, 775 (1963) (agency); *People v. Podolski,* 332 Mich. 508, 515-16, 52 N.W.2d 201, 204, *cert. denied,* 344 U.S. 845, 73 S.Ct. 62 (1952) (proximate cause); *cf. People v. Aaron,* 409 Mich. 672, 733-34, 299 N.W.2d 304, 328-29 (1980) (felony-murder doctrine abolished). *But see Hickman,* 59 Ill.2d at 94, 319 N.E.2d at 513 (proximate cause); *People v. Garippo,* 292 Ill. 293, 298-301, 127 N.E. 75, 77-78 (1920) (agency); *State v. Majors,* 237 S.W. 486, 488 (Mo. 1922) (agency), overruled by *Moore,* 580 S.W.2d at 753 (proximate cause).

One reason for declining to extend the felony-murder doctrine is that such an extension would not achieve the rule's basic purpose. Manifestly, the purpose of deterring felons from killing by holding them strictly responsible for killings they or their co-felons commit is not effectuated by punishing them for killings committed by persons not acting in furtherance of the felony. *Washington,* 402 P.2d at 133, 44 Cal.Rptr. at 445.

Another reason to decline to extend the applicability of the felony-murder doctrine is that the tort liability concept of proximate cause has no proper place in prosecutions for criminal homicide. There is a difference between the underlying rationale of tort and criminal law. Tort law is

primarily concerned with who shall bear the burden of loss, while criminal law is concerned with the imposition of punishment. "Tort concepts of foreseeability and proximate cause have shallow relevance to culpability for murder in the first degree." *Canola,* 73 N.J. at 226, 374 A.2d at 30. Because of the extreme penalty attaching to a conviction of felony murder, a closer and more direct causal connection between the felony and the killing is required than the causal connection ordinarily required under the tort concept of proximate cause. *Canola,* 73 N.J. at 226, 374 A.2d at 30; *Myers,* 438 Pa. at 230-32, 261 A.2d at 556-57; Casenote, 71 Harv.L.Rev. 1565, 1566 (1958); *see People v. Scott,* 29 Mich.App. 549, 555-56, 185 N.W.2d 576, 579-80 (1971). Because the tort liability concept of proximate cause is generally too broad and comprehensive to be appropriate in a criminal proceeding, the proximate cause theory ordinarily should not be employed to extend the applicability of the felony-murder doctrine.[3]

We are persuaded that the felony-murder doctrine should not be extended beyond its traditional common law limitation. We now hold that ordinarily, under the

---

3. In our view, the proximate cause theory has been appropriately used to extend the applicability of the felony-murder doctrine in the so-called "shield" cases. Courts in some jurisdictions have recognized, as has Maryland, that a felon's act in using a victim as a shield or in compelling a victim to occupy a place or position of danger constitutes a direct lethal act against the victim. Such courts have held that this direct lethal act establishes a sufficiently close and direct causal connection to impose criminal liability on a felon when the victim is killed by a nonfelon. *Jackson,* 286 Md. at 443 n.5, 408 A.2d at 719 n.5; *see, e.g.,* Johnson v. State, 252 Ark. 1113, 1116-17, 482 S.W.2d 600, 604 (1972); Wilson v. State, 188 Ark. 846, 849-52, 68 S.W.2d 100, 102 (1934); Keaton v. State, 41 Tex.Crim. 621, 633-34, 57 S.W. 1125, 1129 (1900); Taylor v. State, 41 Tex.Crim. 564, 570-74, 55 S.W. 961, 964-65 (1900); *see* Pizano v. Superior Court of Tulare County, 21 Cal.3d 128, 138-41, 577 P.2d 659, 665-67, 145 Cal.Rptr. 524, 530-32 (1978).

These so-called "shield" cases must be distinguished from the generality of cases that have employed the proximate cause theory to hold that under the felony-murder doctrine a participating felon is guilty of murder when a killing is committed by a nonfelon. *See* above pp. 447-49. In our view, these courts have improperly regarded a felon's act of participation in a felony as establishing a sufficiently close and direct causal connection to impose criminal liability upon a felon when a killing is committed by a nonfelon. *See* Morris, *The Felon's Responsibility for the Lethal Acts of Others,* 105 U.Pa.L.Rev. 50, 54 n.26 (1956).

felony-murder doctrine, criminal culpability shall continue to be imposed for all lethal acts committed by a felon or an accomplice acting in furtherance of a common design. However, criminal culpability ordinarily shall not be imposed for lethal acts of nonfelons that are not committed in furtherance of a common design.[4]

Here, the factual statement presented to the trial court shows that in the course of an armed robbery, a fleeing co-felon was killed by either a police officer or a victim. Manifestly, the killing of the co-felon was committed to thwart the felony rather than to further it. Under Maryland's felony-murder doctrine, the surviving felon is not guilty of murder. Under these circumstances, the factual statement serving as the basis for the plea of first degree felony-murder of a co-felon failed to demonstrate guilt of the crime to which the plea was entered. The plea was not properly accepted by the trial court. Accordingly, we shall reverse the conviction of first degree murder.[5] We shall affirm the convictions for assault with intent to murder and robbery with a deadly weapon.

> *As to first degree murder, judgment reversed.*
> *As to assault with intent to murder and robbery with a deadly weapon, judgments affirmed.*
> *Costs to be paid by Mayor and City Council of Baltimore.*

---

**4.** For a circumstance in which criminal liability is properly imposed, *see Jackson,* 286 Md. 430, 408 A.2d 711, and cases cited in n.3 above.

**5.** In view of our decision, we need not consider the appellant's contention that "the record fails to show that appellant was adequately advised of the consequences of his plea of guilty to the charge of first degree murder."